Oliver R. TOLIVER, Petitioner,

v.

Gary R. McCAUGHTRY, Respondent.

No. 95–C–1105.

United States District Court,
E.D. Wisconsin.

Dec. 18, 1995.

Oliver R. Toliver, Waupun, WI, pro se.

Sally L. Wellman, Assistant Attorney General, Madison, WI, for Respondent.

## MEMORANDUM AND ORDER

WARREN, District Judge.

Before the Court is Oliver Toliver's *pro se* Petition to Proceed *In Forma Pauperis* and Petition for Writ of Habeas Corpus pursuant to 28 U.S.C. § 2254 in the above-captioned matter. Toliver is currently serving a life sentence in the Waupun Correctional Institution in Waupun, Wisconsin for first-degree intentional homicide, party to a crime in violation of Wis.Stat. §§ 940.01(1) and 939.05. For the following reasons, Toliver's Petitions are DENIED.

## I. FACTUAL AND PROCEDURAL BACKGROUND

In an action brought under 28 U.S.C. § 2254, the factual determinations of the state trial and appellate court are "presumed to be correct." 28 U.S.C. § 2254(d) (providing that "a determination after a hearing on the merits of a factual issue ... evidenced by a written finding, written opinion, or other reliable and adequate written indicia, shall be presumed to be correct"); *Lewis v. Huch,* 964 F.2d 670, 671 (7th Cir.1992). Accordingly, this Court adopts the Wisconsin Court of Appeals' statement of facts. *See State of Wisconsin v. Toliver,* 186 Wis.2d 576, 522 N.W.2d 36, 1994 WL 313280 (Ct.App. July 5, 1994) (per curiam).

Oliver Toliver was convicted by a jury in Milwaukee County Circuit Court of first-degree intentional homicide, party to a crime, contrary to Wis.Stat. §§ 940.01(1) and 939.05 and was sentenced to life imprisonment with parole eligibility on June 27, 2045. In an unpublished opinion, the appellate court summarized the facts underlying his conviction as follows:

On May 12, 1991, Toliver and his brother Stephen, learned that Stephen's girlfriend's son, Commosie Thompson, was missing $1,800 dollars. Thompson suspected that Tina Rodgers, a young woman who lived in the attic of the house, took the money. The jury heard two opposing versions of the murder. Thompson testified that when Stephen and Toliver brought Rodgers back to the house, Stephen questioned her about the missing money, threw his gun on the couch and told Thompson to kill whomever he thought took the money. Thompson further testified that Toliver walked up to Rodgers and shot her in the forehead and again in the temple. Thompson's mother Joetta Foster, and his two friends, Darian Robinson and Cory Henry, corroborated Thompson's testimony.

Toliver denied participating in the murder. He testified that after Rodgers arrived, he left the house, visited friends and relatives, and went out to dinner. After returning to the house, he left to feed his dog. At approximately 9:30 p.m., he returned to the house with Stephen. After watching a movie, he fell asleep until 12 a.m., when Stephen woke him to help move Rodgers' body. They loaded the quilt-covered body into Stephen's car and left it in bushes near the embankment of the Lincoln Creek Parkway.

On May 15, a body identified as Rodgers was discovered wrapped in a quilt near bushes along the Lincoln Creek Parkway. Dr. John Teggatz of the Milwaukee County Medical Examiner's office testified that death was due to bullet wounds to the brain.

*Id.* 1994 WL 313280, at *1.

Not believing that Toliver had any basis for appeal, his defense counsel filed a "no merit" report under Wis.Stats. § 809.32, and *Anders v. California,* 386 U.S. 738, 87 S.Ct. 1396, 18 L.Ed.2d 493 (1967). Toliver filed a response to the "no merit" report. The no merit report discussed two potential issues: whether the trial court committed prejudicial error by (1) finding that Toliver's statements to authorities were voluntary and (2) admitting into evidence a photograph of the murder victim. In addition to the two issues raised by the no merit report, Toliver's response claimed (1) he received ineffective assistance of counsel; (2) the trial court demonstrated bias in questioning witnesses; (3) the trial judge erroneously refused to disqualify himself; and (4) the prosecutor failed to disclose crucial evidence. In affirming his conviction, the appellate court found that none of these six issues had arguable merit. *Toliver,* 1994 WL 313280, at *1. On September 20, 1994, the Wisconsin Supreme Court denied review. *State v. Toliver,* —— Wis.2d ——, 525 N.W.2d 733 (1994).

On October 30, 1995, Toliver filed the instant petition on the following grounds:

(1) the trial judge abused his discretion in questioning defendant and soliciting questions from jurors after every witness testified (*Petition,* A, ground one, pg. 5);

(2) the trial judge abused his discretion when he failed to disqualify himself (*Petition,* B, ground two, pg. 5);

(3) the prosecutor failed to disclose crucial evidence favorable to the defendant relating to the defendant's allegation that he was interrogated after he demanded counsel and a statement made by the defendant was used against him (*Petition,* C, ground three, pg. 6);

(4) the trial court erred in allowing an alleged statement made by the defendant to investigating officers to go before the jury when the statement was obtained as the result of "psychological" "police coercion" and a "long detention" (*Petition,* F, G, & H, pgs. 7 & 8);

(5) the trial court committed prejudicial error by allowing the jury to view a nude photograph of the murder victim (*Petition,* D, ground four, pg. 6); and

(6) ineffective assistance of counsel by both trial and appellate counsel (*Petition,* E & I, pgs. 7 & 8).

## II. *LEGAL STANDARD*

The federal *in forma pauperis* statute, 28 U.S.C. § 1915, is designed to insure that indigent litigants have meaningful access to the federal courts. *Neitzke v. Williams,* 490 U.S. 319, 324, 109 S.Ct. 1827, 1831, 104 L.Ed.2d 338 (1989). As a result, it allows an indigent party to commence an action in federal court, without costs and fees, upon submission of an affidavit asserting an inability "to pay such costs or give security therefor" and stating "the nature of the action, defense or appeal and the affiant's belief that he is entitled to redress." 28 U.S.C. § 1915(a).

Recognizing that some nonpaying litigants may attempt to abuse this privilege, however, Congress also authorized the courts to dismiss such a case "if the allegation of poverty is untrue, or if satisfied that the action is frivolous or malicious." 28 U.S.C. § 1915(d). An action is considered frivolous if there is no arguable basis for relief either in law or fact, *Denton v. Hernandez,* 504 U.S. 25, 31, 112 S.Ct. 1728, 1733, 118 L.Ed.2d 340 (1992); *Neitzke,* 490 U.S. at 325, 109 S.Ct. at 1831, and, as long as the suit is not frivolous or malicious, a district court should grant the petitioner's request. *Free v. United States,* 879 F.2d 1535, 1536 (7th Cir.1989). In making such determinations, the Court is obliged to give the petitioner's *pro se* allegations a liberal construction. *Hughes v. Rowe,* 449 U.S. 5, 9–10, 101 S.Ct. 173, 175–76, 66 L.Ed.2d 163 (1980) (per curiam).

Habeas relief is an exceptional remedy which, while designed as a "bulwark against convictions that violate fundamental fairness," entails significant costs. *Engle v. Isaac,* 456 U.S. 107, 126, 102 S.Ct. 1558, 1571, 71 L.Ed.2d 783 (1982). The most important of these costs is the uncertainty of criminal

convictions. *Coleman v. Thompson,* 501 U.S. 722, 748, 111 S.Ct. 2546, 2563, 115 L.Ed.2d 640 (1991). As noted by the Supreme Court, "both the individual defendant and society have an interest in insuring that there will at some point be the certainty that comes with an end to litigation and that attention will ultimately be focused not on whether the conviction was free from error but rather on whether the prisoner can be restored to a useful place in the community." *Engle,* 456 U.S. at 127, 102 S.Ct. at 1571.

■ Given the importance of finality, a habeas petition, which may be brought years after conviction, does not serve as a substitute for a direct appeal. *Belford v. United States,* 975 F.2d 310, 313 (7th Cir.1992); *Bontkowski v. United States,* 850 F.2d 306, 312 (7th Cir.1988). As a result, when possible, all issues raised in a habeas petition must first be raised on direct appeal. *Theodorou v. United States,* 887 F.2d 1336, 1339 (7th Cir.1989); *Williams v. United States,* 805 F.2d 1301, 1304 (7th Cir.1986), *cert. denied,* 481 U.S. 1039, 107 S.Ct. 1978, 95 L.Ed.2d 818 (1987).

■ When a party fails to properly raise a constitutional objection on direct appeal, he or she may not proceed in a federal habeas petition unless showing both (1) good cause for failing to pursue the neglected issue on direct appeal, and (2) actual prejudice stemming from a constitutional violation. *Wainwright v. Sykes,* 433 U.S. 72, 87, 97 S.Ct. 2497, 2506, 53 L.Ed.2d 594 (1977); *Williams,* 805 F.2d at 1306–07. A party is barred, without regard to "cause and prejudice," from raising non-constitutional challenges in habeas proceedings that could have been raised on direct appeal. *Bontkowski,* 850 F.2d at 313. The "cause and prejudice" test applies both to procedural defaults committed at trial and those made on appeal. *Murray v. Carrier,* 477 U.S. 478, 491, 106 S.Ct. 2639, 2647, 91 L.Ed.2d 397 (1986).

■ "Good cause" exists when some factor external to the defense impedes a defendant's ability to comply with a procedural rule. *Id.* at 488, 106 S.Ct. at 2645. Ineffective assistance of counsel in violation of the Sixth Amendment may constitute "cause" under *Wainwright* for a procedural default. *Id.* When assessing whether a party has

established cause, the Court may only examine that party's proffered reasons for not raising timely objections and not speculate about other possible explanations. *Williams,* 805 F.2d at 1309; *Qualls v. United States,* 774 F.2d 850, 851 (7th Cir.1985). To prove "prejudice" under *Wainwright,* a party must show "not merely that the errors ... created a possibility of prejudice, but that they worked to his actual and substantial disadvantage, infecting his entire trial [or appeal] with error of constitutional dimensions." *United States v. Frady,* 456 U.S. 152, 170, 102 S.Ct. 1584, 1596, 71 L.Ed.2d 816 (1982). This requires "a showing that the prisoner was denied 'fundamental fairness' at trial." *Murray,* 477 U.S. at 491, 106 S.Ct. at 2647.

■ A district court may entertain a state prisoner's petition for habeas relief only on the grounds that the prisoner's confinement violates the Constitution, laws, or treaties of the United States. 28 U.S.C. § 2254(a). Habeas relief for constitutional trial errors must be granted only when the error "had substantial and injurious effect or influence in determining the jury's verdict." *Brecht v. Abrahamson,* 507 U.S. 619, 623, 113 S.Ct. 1710, 1714, 123 L.Ed.2d 353 (1993) (quoting *Kotteakos v. United States,* 328 U.S. 750, 756, 66 S.Ct. 1239, 1243, 90 L.Ed. 1557 (1946)). "Under this standard, habeas petitioners may obtain plenary review of their constitutional claims, but they are not entitled to habeas relief based on trial error unless they can establish that it resulted in 'actual prejudice.'" *Id.* at 637, 113 S.Ct. at 1722; *see United States v. Lane,* 474 U.S. 438, 449, 106 S.Ct. 725, 732, 88 L.Ed.2d 814 (1986).

## III. *DISCUSSION*

■ Before a state prisoner can raise a claim in federal habeas corpus proceedings, he must exhaust state remedies. *See* 28 U.S.C. § 2254(b). According to the Seventh Circuit:

Before considering a petition for habeas corpus on its merits, a district court must make two inquiries—whether the petitioner exhausted all available state remedies and whether the petitioner raised all his claims during the course of the state pro-

ceedings. If the answer to either of these inquiries is "no" the petition is barred. *Henderson v. Thieret,* 859 F.2d 492, 496 (7th Cir.1988) *cert. denied,* 490 U.S. 1009, 109 S.Ct. 1648, 104 L.Ed.2d 163 (1989).

■■■ The Court concludes, based on Mr. Toliver's petition and the appellate court decision, that he has, in fact, exhausted his state remedies. The highest state court was afforded a fair opportunity to rule on the factual and theoretical substance of Toliver's six claims. Therefore, because no state remedy is currently available to him, the exhaustion requirement is satisfied.

■■■ Next the Court determines whether any of Toliver's claims are procedurally defaulted. Procedural default "occurs when a claim could have been but was not presented to the state court and cannot, at the time the federal court reviews the habeas petition, be presented to the state court." *Resnover v. Pearson,* 965 F.2d 1453, 1458 (7th Cir.1992), *cert. denied,* —— U.S. ——, 113 S.Ct. 2935, 124 L.Ed.2d 685 (1993). Because Toliver's grounds for relief were presented to the state court, procedural default is not at issue.

Toliver's claims satisfy the procedural requirements of section 2254, and therefore may be addressed on the merits. Under Rule 4 of the Rules governing § 2254 cases in the U.S. District Courts, "if it plainly appears from the face of the petition ... that the petitioner is not entitled to relief in the district court, the judge shall make an order for its summary dismissal."

As Mr. Toliver proceeds *pro se* with the assistance of a "jailhouse lawyer," the Court will construe his petition liberally. *Hughes,* 449 U.S. at 9–10, 101 S.Ct. at 175–76; *Caldwell v. Miller,* 790 F.2d 589, 595 (7th Cir. 1986). Section 2254 authorizes habeas relief to remedy criminal judgments issued "in violation of the Constitution or laws and treaties of the United States," and may not be invoked to correct erroneous interpretations of state law which fail to reach the level of Constitutional violations. Section 2254 does not authorize this Court to sit in appellate review of state court decisions, and permits the Court only to review criminal judgments which are issued in violation of the Constitution. *See Brecht,* 507 U.S. at 632–33, 113 S.Ct. at 1719. So doing, the Court finds that Toliver fails to state an arguable basis for relief.

■■■ Toliver argues that the trial judge abused his discretion by allowing jurors to solicit questions from the witnesses and the defendant. The appellate court discussed that "[a]fter a witness testified, the court permitted jurors to write their question on notepaper to be passed to the judge for review. After screening, the judge would ask the witnesses the questions." *Toliver,* 1994 WL 313280, at *3. While Toliver concedes that Wis.Stat. § 906.14(2) gives the judge the authority to interrogate witnesses, the statute is silent with regards to whether the judge has the authority to solicit questions from jurors in a criminal trial. This Court agrees with Toliver that the appellate court gave short shrift to Toliver's argument regarding the appropriateness or propriety of the procedure of soliciting questions from jurors "where a man's life depends on jurors being quite [sic] listeners of facts, as opposed to ... interrogators." *Petitioner's Memorandum to the Wisconsin Supreme Court,* pg. 2. However, the appellate court stated that the solicited "questions were based upon matters the jury felt needed clarification and did not demonstrate bias or prejudice." *Toliver,* 1994 WL 313280, at *4. Furthermore, the petitioner does not give one example of a question that unfairly prejudiced him during his trial. The Court concludes that the trial court did not commit clear error in soliciting questions from jurors for purposes of clarification. *See State v. Bowie,* 92 Wis.2d 192, 209, 284 N.W.2d 613, 620 (1979) (questions posed by the trial court designed to clarify testimony and expedite the trial did not disclose any partiality on the part of the trial court and were not prejudicial to defendant).

■■■ Toliver argues that Judge Di-Motto abused his discretion when he failed to disqualify himself. Toliver argues that the trial judge should have disqualified himself under Wis.Stat. §§ 757.19(2)(c) and (g) which provide in pertinent part:

> (2) Any judge shall disqualify himself or herself from any civil or criminal action or proceeding when one of the following situations occurs: ... (c) When a judge previously acted as counsel to any party in the

same action or proceedings.... (g) When a judge determines that, for any reason, he or she cannot, or it appears he or she cannot, act in an impartial manner.

Contrary to Toliver's assertions, the appellate court found that the judge did not previously act as an attorney for any party in the same proceeding in violation of Wis.Stat. § 757.19(2)(c). The record revealed that "when the judge practiced as a lawyer, apparently a prosecutor, he knew the victim because she had been a victim of an assault in an unrelated case years before." *Toliver*, 1994 WL 313280, at *4. Even if the trial judge did represent the victim in a prior proceeding, which the record indicates he did not (he likely represented the State of Wisconsin prosecuting the perpetrator of an assault), the statute does not prevent a judge from presiding in a trial in a case different from the one in which he represented a litigant. *Sturdevant v. State*, 49 Wis.2d 142, 145, 181 N.W.2d 523, 525 (1970).

■■■■ Toliver argues that the "appearance of bias" raises a due process objection to the judge's refusal to recuse himself. "Due process requires a neutral and detached judge. If the judge evidences a lack of impartiality, whatever its origin or justification, the judge cannot sit in judgment." *State v. Rochelt*, 165 Wis.2d 373, 378, 477 N.W.2d 659, 661 (Ct.App.1991). Nonetheless, "a litigant is denied due process only if the judge, in fact, treats him or her unfairly." *Id.* The record provides no basis for the judge to disqualify himself, and moreover, the petitioner has not submitted facts demonstrating where he was treated unfairly by Judge DiMotto. Thus, this issue lacks merit for habeas corpus relief.

Toliver argues that the prosecutor failed to disclose crucial evidence favorable to the defendant, in particular jail movement records. However, jail movement records were introduced into evidence at trial as exhibit four, an officer explained the records and was cross-examined. On appeal, Toliver appended several copies of jail records to his brief but failed to indicate how his records differed from the ones introduced at trial or how the records would be exculpatory. In Toliver's Section 2254 Motion, this Court cannot discern what "inconsistencies" or exculpatory evidence are apparent in the jail movement records because these records are not attached to Toliver's Section 2254 Motion and Toliver does not present facts that support his conclusory arguments.

■■■■ Toliver argues that the trial court erred in allowing an inculpatory statement made by the defendant to investigating officers to go before the jury. The appellate court stated:

There is no indication that the officers made any threats, promises or displayed any weapons during the questioning. Toliver also acknowledged that he was in a cell with a rest room and had the opportunity to sleep between interviews. The court found that at the time Toliver was interrogated while in custody, he was informed of his Miranda rights, was not under the influence of any intoxicant, was not threatened or coerced and was not denied sleep or food.

The record also supports the trial court's finding that Toliver knowingly, voluntarily and intelligently waived his right to counsel at the time he made his inculpatory statement. Toliver, age forty-four, had completed the eleventh grand and obtained a GED. Toliver claims that he asked a female officer for a lawyer. The investigating officer testified that when Toliver requested a lawyer, he was told that the public defender would be contacted. The record supports the trial court's determination that Toliver himself chose to reinitiate the interrogation and stated that he was willing to talk without a lawyer.

*Toliver*, 1994 WL 313280 at *2. If the defendant initiates further questioning, questioning may resume even though the defendant invoked his right to have counsel present. *Edwards v. Arizona*, 451 U.S. 477, 484–85, 101 S.Ct. 1880, 1884–85, 68 L.Ed.2d 378 (1981). It is clear that Toliver made his inculpatory statement under constitutional circumstances.

■■■■ Contrary to Toliver's argument, the appellate court addressed the meeting between Toliver and his brother Stephen where Toliver argued that this meeting rendered his custodial statement involuntary due to "psychological" force. The appellate court refused to upset the trial court's rejec-

tion of Toliver's version of the interrogation on credibility grounds. This Court gives the trial court's findings, with respect to credibility and weight of testimony, deference. Thus, admitting into evidence an inculpatory statement made by Toliver, after Toliver reinitiated questioning, does not constitute a constitutional violation.

Federal courts can grant habeas relief only when a violation of federal statutory or constitutional law has occurred. *Haas v. Abrahamson,* 910 F.2d 384, 389 (7th Cir. 1990). Because the admissibility of evidence in state court proceedings generally is a matter of state law, state court evidentiary rulings rarely will serve as grounds for granting a writ of habeas corpus. *Id.* In order to issue a writ of habeas corpus, the evidentiary ruling must violate the defendant's due process rights by denying the defendant a fundamentally fair trial. *Id.* Thus, Toliver's ground for habeas relief based on the admission of a confession or inculpatory statement is without merit.

Toliver argues that the trial court committed prejudicial error by allowing the jury to view a nude photograph of the murder victim. Whether photographs are displayed to the jury is discretionary with the trial judge. *State v. Hagen,* 181 Wis.2d 934, 946, 512 N.W.2d 180, 184 (Ct.App.1994); *see also Sage v. State,* 87 Wis.2d 783, 788, 275 N.W.2d 705, 708 (1979). The trial court's discretion will be upheld unless admitting the photograph was wholly unreasonable or the only purpose was to inflame and prejudice the jury. *Id.* The appellate court reviewed the photograph and agreed with the trial court's conclusion that in balancing the probative value of the photograph against the prejudicial effect, the photograph was not unfairly prejudicial. Hence, there is no arguable merit to habeas corpus relief based upon the admission of the photograph into evidence.

Toliver argues that he received ineffective assistance of counsel. Toliver's ineffective assistance of counsel claim involves mixed questions of law and fact, although deference is still to be given to the state and appellate court's findings. *Strickland v. Washington,* 466 U.S. 668, 687, 104 S.Ct. 2052, 2064, 80 L.Ed.2d 674 (1984). To

demonstrate ineffective assistance of counsel, a defendant must prove that his "counsel made errors so serious that he [or she] was not functioning as the 'counsel' guaranteed by the Sixth Amendment," and that the defendant was prejudiced by this deficiency. *Id.; Hollenback v. United States,* 987 F.2d 1272, 1275 (7th Cir.1993). The performance of an attorney is viewed under a highly deferential standard, and there is a strong presumption that his or her advocacy falls within the reasonable standard of conduct. *Strickland,* 466 U.S. at 687–90, 104 S.Ct. at 2064–66; *Hollenback,* 987 F.2d at 1275. The fact that an attorney does not pursue a particular strategy during representation does not render his performance ineffective unless the movant makes a clear showing that such strategy falls below an "objective standard of reasonableness." *Strickland,* 466 U.S. at 688, 104 S.Ct. at 2064; *United States v. Simone,* 931 F.2d 1186, 1197 (7th Cir.), *cert. denied,* 502 U.S. 981, 112 S.Ct. 584, 116 L.Ed.2d 609 (1991). "Objective reasonableness" does not require counsel to raise every conceivable argument that may have some support in the record, *Gray v. Greer,* 800 F.2d 644 (7th Cir.1986), and the complaining party must identify "specific acts of omissions that fell outside the wide range of professionally competent assistance" in order to satisfy the performance prong. *Lilly v. Gilmore,* 988 F.2d 783, 785 (7th Cir.), *cert. denied,* —— U.S. ——, 114 S.Ct. 154, 126 L.Ed.2d 116 (1993). To satisfy the prejudice prong, a habeas petitioner must demonstrate a reasonable probability that counsel's unprofessional errors affected the outcome of the trial. *Id.; Strickland,* 466 U.S. at 690, 104 S.Ct. at 2066.

It is clear that Toliver has not made the requisite "clear showing" under *Strickland* in this case. As a general rule:

"a lawyer is not required to pursue objectives or employ means simply because a client may wish that the lawyer do so ... In questions of means, the lawyer should assume responsibility for technical and legal tactical issues, but should defer to the client regarding such questions as the expense to be incurred and concern for third persons who might be adversely affected."

*Wisconsin Supreme Court Rule of Professional Conduct* 20:1.2 (Comment). Only when a tactical decision is manifestly unreasonable and causes prejudice to the client will the Court find a Sixth Amendment violation. In this case, the appellate court found that the "defense counsel [at trial] challenged witness credibility and inconsistencies in the record." *Toliver*, 1994 WL 313280, at \*3. As for appellate counsel, filing a no merit brief on appeal does not automatically evince ineffective assistance of counsel. *State ex rel. McCoy v. Wisconsin Court of Appeals*, 137 Wis.2d 90, 97, 403 N.W.2d 449, 452 (1987). Moreover, Toliver has failed to demonstrate that but for counsel's unprofessional errors (and this Court has found none) the result of the proceedings would have been different. *See Strickland*, 466 U.S. at 694, 104 S.Ct. at 2068. Consequently, because the petitioner has failed to make a sufficient showing that either his trial or appellate counsel's performance was deficient, the Court need not address whether the petitioner made a showing that he was prejudiced by his counsels' performance. *Kubat v. Thieret*, 867 F.2d 351, 360 (7th Cir.1989). Therefore, pursuant to Rule 4, because the Court finds no possible basis for relief, Toliver's ineffective assistance of counsel claim is summarily dismissed.

██ Toliver was charged with the first-degree murder of Tina Rodgers. Under Wisconsin law, the state was required to prove that Toliver had the specific intent to kill Rodgers in order to convict him. The jury, as arbiter of credibility, rejected Toliver's testimony and accepted the testimony of four eyewitnesses to the execution-style murder. From the record, this Court finds the evidence sufficient to establish that Toliver caused Rodgers death, and is not incarcerated in violation of the Constitution or laws of the United States.

The historic purpose of habeas corpus is to afford relief to those whom society has "grievously wronged." *Fay v. Noia*, 372 U.S. 391, 440–41, 83 S.Ct. 822, 849–50, 9 L.Ed.2d 837 (1963); *see also Kuhlmann v. Wilson*, 477 U.S. 436, 447, 106 S.Ct. 2616, 2623, 91 L.Ed.2d 364 (1986) (plurality opinion). Upon examining the petitioner's motion, it is clear to the Court that the petitioner is not entitled to relief on any of the grounds alleged. Therefore, the Court must dismiss his § 2254 motion pursuant to Rule 4. Finally, although the Court finds that the petitioner meets the statutory indigence requirements of 28 U.S.C. § 1915(a), the foregoing analysis dictates that the Court also dismiss the petitioner's *in forma pauperis* petition as frivolous under § 1915(d).

## IV. *CONCLUSION*

For the foregoing reasons, **IT IS ORDERED** that Toliver's petition for a writ of habeas corpus pursuant to 28 U.S.C. § 2254 is **DENIED** for his failure to show that he is in custody in violation of the Constitution or laws of the United States, and this case is **DISMISSED.**

**SO ORDERED.**