**Brian L. HAAS, Plaintiff,**

v.

**Gordon ABRAHAMSON, Superintendent of the Dodge Correctional Institute, Defendant.**

**No. 88–C–236.**

United States District Court, E.D. Wisconsin.

Jan. 31, 1989.

Gerald P. Boyle, Gerald P. Boyle, S.C., Milwaukee, Wis., for plaintiff.

Douglas Haag, Asst. Atty. Gen., Wisconsin Dept. of Justice, Madison, Wis., for defendant.

## DECISION AND ORDER

WARREN, Chief Judge.

This is a petition for a writ of habeas corpus, filed pursuant to 28 U.S.C. § 2254. The petitioner is currently incarcerated in the Dodge Correctional Institute in Waupun, Wisconsin, following his conviction in Ozaukee County Circuit Court for first-degree murder and injury by conduct regardless of life.

The petitioner claims that he is being held unlawfully because his trial was violative of provisions of the United States Constitution ensuring his rights to due process and equal protection under the law.

After an examination of the record, the Court denies the petition for the reasons explained below.

## BACKGROUND

The petitioner was charged with first-degree murder of Thomas Stanlick and attempted murder of Debra Risch. The petitioner pled not guilty to the charges. In advance of trial, the petitioner unsuccessfully moved the court for an order allowing him to offer psychiatric and psychological testimony in his defense. During the trial, the petitioner objected to the State's introduction of various photographs and a video-

taped film, however, the court admitted the videotaped film into evidence as well as ten of the fourteen disputed photographs. Following the trial, the jury found the petitioner guilty of first-degree murder of Thomas Stanlick and not guilty of attempted murder of Debra Risch but guilty of a lesser included offense of injury by conduct regardless of life as to Debra Risch.

After his conviction, the petitioner brought a motion to reduce the first-degree murder verdict to second-degree murder or, in the alternative, for a new trial on count one. The petitioner asserted that the jury's verdict finding the petitioner guilty of first-degree murder by firing shots three and four with the intent-to-kill and not guilty of attempted murder by firing shots one, two, and five without intent-to-kill is repugnant. The trial court denied the petitioner's motion. The petitioner then appealed his judgment of conviction and the denial of his post-conviction motions, raising in his appeal the three issues that are now before this Court. The Wisconsin Court of Appeals affirmed the trial court. The Wisconsin Supreme Court denied the petition for review.

The following relevant facts regarding the first-degree murder charge and the attempted murder charge were summarized by the appellate court:

> Haas was convicted of killing Tom Stanlick and injuring Debra Risch on August 2, 1984. Haas and Risch had dated on a regular basis for nearly a year at that time. Their relationship, however, was apparently unstable during the summer of 1984. Evidence at trial indicated that Haas was very upset about the prospect of the relationship ending. When Haas saw Risch and Stanlick together at Risch's home on August 2, he went to his home, got a shotgun and returned to Risch's home. Haas fired five shots in rapid succession at Risch and Stanlick. Risch was hit in her left arm and her right leg. Stanlick was fatally shot twice in the chest and abdomen.

*State v. Haas*, 132 Wis.2d 472, 390 N.W.2d 115 (1986).

## DISCUSSION

The petitioner has properly exhausted all state remedies, as required by 28 U.S.C. § 2254(b), and has raised three issues in his petition to this Court. First, he claims that he had a constitutional due process right to use psychiatric and psychological testimony for the following three purposes: (1) to give an opinion on whether the petitioner was able to form the requisite intent to take human life in contravention of Wis. Stat. § 940.01; (2) to explain to the jury what the evidence indicates in terms of stress and the effect excessive stress has on people; and (3) to explain to the jury the significance of the physical evidence in relation to the petitioner's state of mind and state whether the evidence fits into the concept of depravity of mind or heat of passion manslaughter, lesser included offenses. Second, the petitioner claims that the jury's verdict finding the petitioner guilty of first-degree murder by firing shots three and four with the intent-to-kill and not guilty of attempted first-degree murder by firing shots one, two and five without intent-to-kill is repugnant and in violation of the petitioner's right to due process of law. Third, the petitioner claims that the trial court erred in admitting photographs and a film that "prejudicially inflamed the passions of the jury", thus, depriving the petitioner of a fair trial.

### I. *Psychiatric and Psychological Testimony*

The petitioner asserts that the trial court denied him his constitutional right to use psychiatric and psychological testimony for the following purposes:

(1) to give an opinion on whether the petitioner was able to form the requisite intent to take human life in contravention of Wis.Stat. § 940.01;

(2) to explain to the jury what the evidence indicates in terms of stress and the effect excessive stress has on people; and

(3) to explain to the jury the significance of the physical evidence in relation to whether the evidence fits into the concept

of depravity of mind or heat of passion manslaughter, lesser included offenses.[1]

In his proffer of proof in advance of trial, the petitioner did not put a psychiatrist or psychologist on the stand. Instead, the petitioner's attorney advanced the following arguments:

Based upon the facts as I know them to be it seems to me that the defendant was exhibiting some kind of an out of character manifestation of personality at the time that this happened, and I have been told by the doctors in their analysis as to how they feel and what they feel was happening in his life at the time that he did what he did. I realize and recognize that under no circumstances can I ask the ultimate question of opinion of an expert as to whether or not an element was there or not there, but I think a jury is entitled to hear from professionals such as the psychiatrist and psychologist I have named and others that I would probably employ for that investigative purpose; that because of what was happening in this young man's life in his relationship with the victim, the female victim of one of the two charges, that his conduct was based upon the stresses that he was experiencing; because of the relationship that he had developed that he was reacting as opposed to acting. In that regard I am of the opinion that a doctor would testify that Mr. Haas was acting out of character; that he was not aggressive in nature; that he became an aggressor when he perceived and saw certain things and they influenced his psychological makeup, and I am confused as to whether or not the law will allow me to do that. Clearly in the ultimate question of specific intent to take human life I know I am prohibited from that, but I don't see where I am prohibited from bringing to the jury's attention a doctor's opinion as to what Mr. Haas was at the time in question, what he was all about before, during and after the fact, and to allow the jury to accept or reject that informa-

tion when it comes to the ultimate question [of intent] …

I am not making a specific offer of proof except sufficiently enough to say that both of the professionals whose name I have mentioned would indeed testify basically in the manner and form in which I have stated; that this young man had experienced great trauma in regards to his relationship with this young lady; that he was under great stress; that the relationship was the kind of relationship with the kind of loyalty and devotion that perhaps is more exhibited by the very strong marital tie between a husband and wife; that he was confused by some of the responses he was receiving; that when he saw certain things that he saw on the day in question he became extremely agitated and provoked and that upon his returning back to the farm after having—or the house after having retrieved or gotten a shotgun he continued to perceive certain things and perceiving what he was seeing going on inside the house caused him to, in effect, explode not in a psychiatric sense of insanity but certainly rage of great proportion

. . . . .

The jury is ultimately going to ask itself the question of why did this youngster who otherwise was of wholesome character do something as dastardly as what we have heard here in the courtroom; and I think it fair play for a jury to be able to hear about how this boy was so devoted and had these imaginary kind of feelings about what his future was going to be because of his relationship with this young lady only to find it all go up in smoke and what effect that had on him; that he became enraged, that he acted out of character, that based upon their analysis of him and psychological testing that Brian Haas was not an aggressive young man, he was very passive

. . . . .

1. The Court recognizes that the petitioner's offer of proof on appeal and for this habeas eliminates one of the proffered purposes given at trial for the testimony. The Court addresses only the purposes offered in this habeas.

I furthermore do not feel at this juncture that my offer of proof has to be any stronger than it is here today when I inform the Court that two doctors would testify that Brian Haas was relying upon a relationship that was not solid as he perceived it to be; that he was under a great deal of stress because of what he was perceiving in relationship to this young lady; that he felt abandoned and betrayed and that he was experiencing a lot of psychological reaction to that at the time that he did what he did without asking any ultimate questions. How can a layman know that?

Transcript of proceedings on December 3, 1984 at 14–30.

The trial court found the offer of proof to be an appropriate offer of proof notwithstanding the lack of testimony. Transcript of proceedings on December 3, 1984 at 33. Nevertheless, the court denied the petitioner's motion for an order allowing him to offer psychiatric and psychological testimony in his defense. In denying the motion, the court stated:

Whether you would be asking for psychiatric testimony regarding a state of mind involving depravity or heat of passion in lieu of intent to take life or you would be asking for a statement from the psychiatrist or psychologist on the subject of intent it seems to me that we are dealing with the same subject. If it's an alternative to one, it is still a comment on the intent or lack of intent whether it's put in the positive or the negative, so that the ingenuity of your motion is to request that, I recognize, by indirection that which you are directly prohibited from offering by way of *Steele.*

Transcript of proceedings on December 3, 1984 at 35. The court further stated that the proffered testimony "simply would not be relevant or probative to the jury's consideration." Transcript at 35.

A review of the three proffered purposes for introduction of the testimony supports the trial court's conclusions.

 First, the petitioner offers the testimony for the purpose of eliciting an opinion on whether the petitioner was able to form the requisite intent to take human life in contravention of Wis.Stat. § 940.01. This is precisely the testimony held to be inadmissible by the Wisconsin Supreme Court in *Steele v. State,* 97 Wis.2d 72, 97, 294 N.W.2d 2, 13 (1980). The petitioner concedes that the psychiatrist's ultimate opinion would be inadmissible, but contends that "everything up to that point" should be admissible. The petitioner makes this argument drawing on the following language of *Steele:*

It should be made clear, however, that we do not exclude from admission in the guilt phase of the trial ordinarily admissible evidence which tends to prove the state of mind of the defendant.

*Steele,* 97 Wis.2d at 98, 294 N.W.2d at 14. However, the court in *Steele* continues:

Previous statements to the extent that they are admissible, excited utterances, previous conduct, and express declarations bearing on intent or lack of it— whether the alleged crime was accidental, inadvertent, or mistaken—are all admissible. What we bar from introduction at the guilt phase of the trial is expert opinion testimony tending to prove or disprove the defendant's capacity to form the requisite criminal intent.

*Steele,* 97 Wis.2d at 98, 294 N.W.2d at 14. The Wisconsin Supreme Court expressly stated that opinion testimony tending to prove or disprove intent is inadmissible; there is no language to support the petitioner's argument that only the psychiatrist's conclusion regarding intent should be inadmissible. Thus, the proffered testimony regarding the petitioner's capacity to form specific intent is inadmissible. *See Muench v. Israel,* 715 F.2d 1124, 1145 (7th Cir.1983), *cert. denied,* 467 U.S. 1228, 104 S.Ct. 2682, 81 L.Ed.2d 878 (1984) (A state is not constitutionally compelled to recognize the doctrine of diminished capacity and hence a state may exclude expert testimony offered for the purpose of establishing that a criminal defendant lacked the capacity to form a specific intent).

 Second, the petitioner offers the testimony for the purpose of explaining to the jury what the evidence indicates in

terms of stress and the effect excessive stress has on people. The petitioner contends that he should have been allowed to ask a psychiatrist or a psychologist whether the evidence indicates that the petitioner was under excessive stress and what the likely effects of excessive stress are on people. The petitioner, however, has made no showing of the relevance or probative value of testimony on stress except to assert during oral arguments to the trial court that the petitioner was "under a great deal of stress because of what he was perceiving in relationship to this young lady". Transcript of proceedings on December 3, 1984 at 30. Based on this weak proffer, neither the trial court nor this Court could make a finding that testimony on stress would be relevant or have probative value to this case. In addition, it appears that the petitioner may have been seeking to elicit psychiatric testimony on specific intent through a discussion of stress. In fact, the petitioner openly argues in his habeas petition that stress affects a person's ability to form specific intent. Thus, the proffered testimony on stress is inadmissible.

■ Third, the petitioner offers the psychiatric testimony for the purpose of explaining to the jury the significance of the physical evidence in relation to whether the evidence fits into the concept of depravity of mind or heat of passion manslaughter, lesser included offenses. This is, however, nothing more than an attempt to offer testimony on the petitioner's capacity to form specific intent in disguise, which would allow a psychiatrist or psychologist to testify as a super-juror on whether the petitioner is guilty of first-degree murder or a lesser-included offense, second-degree murder. Moreover, the concept of a depraved mind is a legal concept, not a psychiatric concept. There is no evidence that psychiatric or psychological testimony on the concept of a depraved mind is competent; that a psychiatrist or psychologist has any scientific knowledge on which to base an opinion on whether the petitioner evinced a depraved mind. See Dickey, Remington and Schultz, *Law, Trial Judges, and the Psychiatric Witness—Reflections on How a Charge in* *Legal Doctrine Has Been Implemented in Wisconsin*, 3 Int.'l J.L. & Psychiatry 331, 333 (1980). Furthermore, the concept of heat of passion was not relevant to this case because the court did not instruct the jury on manslaughter, nor does the petitioner object to the court's failure to instruct on manslaughter. Thus, the proffered testimony on lesser included offenses is inadmissible.

Based on the above, the Court rejects the petitioner's argument that he was denied his constitutional right to offer psychiatric and psychological testimony in his defense.

## II. *Repugnant Verdicts*

■ The petitioner asserts that the jury's verdict is repugnant. The petitioner was charged with first-degree murder of Thomas Stanlick and attempted murder of Debra Risch. The jury found the petitioner guilty of first-degree murder of Thomas Stanlick and not guilty of attempted murder of Debra Risch but guilty of a lesser included offense of injury by conduct regardless of life as to Debra Risch. First-degree murder is committed by one who causes the death of another human being with the intent to kill that person or another. (Wisconsin Criminal Jury Instruction No. 1130.) Attempted murder is committed by one who, with intent to kill another human being, performs acts which demonstrate unequivocally that he intended to and would have killed that person except for the intervention of another person or some other extraneous factor. (Wisconsin Criminal Jury Instruction No. 1105.) Injury by conduct regardless of life is committed by one who causes great bodily harm to another human being by conduct imminently dangerous to another and evincing a depraved mind, regardless of human life. (Wisconsin Criminal Jury Instruction No. 1250.)

The petitioner asserts that the jury's verdict finding he did not have the specific intent to take human life when he fired shots one, two and five, but did have the specific intent to take human life when he fired shots three and four is repugnant. More specifically, the petitioner contends

that "it is absolutely impossible to change one's intent to kill three times in a matter of seconds." Petition at 26. The petition continues, "[w]hen petitioner began firing that gun he either had the intent to kill for those few seconds that it took to fire the five shots or he didn't have the intent to kill. We absolutely know that the jury believed that when petitioner began firing that he did not have the intent to kill. The jury's verdict that shots three and four were shot with the intent to kill is repugnant to their verdict that shots one, two, and five were fired without the intent to kill." Petition at 26.

In support of his argument, the petitioner cites to a New York case, *People v. Clarke*, 56 A.D.2d 851, 392 N.Y.S.2d 65 (1977). In *Clarke*, the defendant was charged with intentional murder and attempted murder. The jury, in count one, found the defendant not guilty of intentional murder but guilty of a lesser included offense of first-degree manslaughter which required a deranged mind. The jury in count three found the defendant guilty of attempted murder. In other words, the jury had determined in count one that the defendant did not intend to kill a particular third party and then in count three determined that the defendant did intend to kill that third party. The court held that having found the defendant not guilty of intentional murder, the verdict of guilty of attempted murder was repugnant. The court stated "when an indictment charges two crimes, each of which had identical elements, a finding of guilty on one but not on the other is truly repugnant, as opposed to being merely inconsistent." *Clarke*, 56 A.D.2d at 851, 392 N.Y.S.2d at 66.

The petitioner's reliance on *Clarke* is misplaced because the charges in this case do not include identical elements. An element of count one, first-degree murder, is intent to kill *Thomas Stanlick* (emphasis supplied), whereas an element of count two, attempted murder, is intent to kill *Debra Risch* (emphasis supplied). Moreover, it is not inconsistent that his intent was different as to each one. As the trial court noted, the petitioner's relationship with each of these individuals was distinct.

[T]he nature of the relationship between the parties—and by that I mean the past relationship, the love-hate relationship that was between Debra Risch and the defendant—and the strictly animosity feelings that were exhibited by the defendant towards Thomas Stanlick could have in some ways suggested to the jury that there would have been no hesitancy on the defendant's part to have formed the intent to kill as to Thomas Stanlick whereas to Debra Risch there may have been for some fleeting moment some hesitancy.

Transcript of proceedings on August 2, 1985, at 15–16. In addition, the physical evidence reasonably supports the jury's verdict. The petitioner, with a 12 gauge Remington Model 870 pump action shotgun, fired five shots. The first shot hit Debra Risch in the arm from as close as five or six feet. The second shot went through the bedroom wall off toward the area where Debra Risch had retreated during the attack. The muzzle was approximately six feet from the wall when fired. The third and fourth shots hit Thomas Stanlick in the chest and abdomen from a distance of no further that nine feet. The fifth shot hit Debra Risch and caused wounds to her left distal thigh and right proximal medial leg. The evidence supports a finding that the petitioner intended to kill Thomas Stanlick but did not intend to kill Debra Risch. The Court finds that the jury's verdict was not repugnant and upholds the verdict.

Even if the jury's verdict were repugnant, there is no reason to vacate the petitioner's conviction. *United States v. Powell*, 469 U.S. 57, 105 S.Ct. 471, 83 L.Ed.2d 461 (1984). In *Powell*, the defendant was charged in count one of an indictment with conspiracy to possess cocaine with intent to distribute it. Count nine charged the defendant with possession of cocaine with intent to distribute it. Counts three through six charged the defendant with the compound offenses of using the telephone in committing and in causing and facilitating the alleged conspiracy and possession. The jury acquitted the defendant of counts

one, six and nine, but convicted her of counts three through five. The defendant appealed the conviction, arguing that the verdict was inconsistent. The Court held that there was no reason to vacate the defendant's conviction merely because the verdicts could not rationally be reconciled. *Powell*, 469 U.S. at 69, 105 S.Ct. at 479.

> As the *Dunn* court noted, where truly inconsistent verdicts have been reached, "[t]he most that can be said ... is that the verdict shows that either in the acquittal or the conviction the jury did not speak their real conclusions, but that does not show that they were not convinced of the defendant's guilt." *Dunn [v. U.S.], supra,* 284 U.S. [390] at 393, 52 S.Ct. [189] at 190 [76 L.Ed. 356 (1932)]. The rule that the defendant may not upset such a verdict embodies a prudent acknowledgment of a number of factors. First, as the above quote suggests, inconsistent verdicts—even verdicts that acquit on a predicate offense while convicting on the compound offense—should not necessarily be interpreted as a windfall to the Government at the defendant's expense. It is equally possible that the jury, convinced of guilt, properly reached its conclusion on the compound offense, and then through mistake, compromise, or lenity, arrived at an inconsistent conclusion on the lesser offense. But in such situations the Government has no recourse if it wishes to correct the jury's error; the Government is precluded from appealing or otherwise upsetting such an acquittal by the Constitution's Double Jeopardy Clause. *See Green v. United States,* 355 U.S. 184, 188 [78 S.Ct. 221, 223–24, 2 L.Ed.2d 199] (1957); *Kepner v. United States,* 195 U.S. 100, 130, 133 [24 S.Ct. 797, 804–05, 806, 49 L.Ed. 114] (1904).

> Inconsistent verdicts therefore present a situation where "error," in the sense that the jury has not followed the court's instructions, most certainly has occurred, but it is unclear whose ox has been gored. Given this uncertainty, and the fact that the Government is precluded from challenging the acquittal, it is hardly satisfactory to allow the defendant to receive a new trial on the conviction as a matter of course.

*Powell,* 469 U.S. at 64–65, 105 S.Ct. at 476.

### III. *Photographic Evidence*

■ The admission of photographs into evidence is a matter within the sound discretion of the trial court. *Simpson v. State,* 83 Wis.2d 494, 505, 266 N.W.2d 270, 274 (1978).

> It is discretionary with the trial court to admit photographs to aid the jury in securing a clear idea of a material situation when the photographs better show that situation than does the testimony of witnesses ... where photographs are not substantially necessary or instructive to show material facts or conditions, and are of such a character as to arouse sympathy or indignation, or divert the minds of the jury to improper or irrelevant considerations, they should be excluded.

> . . . . .

> While reasonable persons looking at the photographs as a part of the record may have differing opinions in regard to whether they were cumulative, inflammatory, or prejudicial, the judgment is essentially one to be exercised by the trial judge. He, better than anyone else, in light of the evidence, can make the determination that the photographs will assist the jury in a rational and dispassionate determination of the facts. Where a trial judge has applied the appropriate discretionary standards, this court will not reverse his decision unless it appears that, in light of the record as a whole, his conclusion was wholly unreasonable or if the circumstances indicate that the only purpose of the photographs was to inflame or prejudice the jury.

*Simpson,* 83 Wis.2d at 505–506, 266 N.W.2d 274–275.

The trial court admitted the following exhibits over the petitioner's objections:

| State Exhibit Number | Description |
| --- | --- |
| 59 | X-ray of Thomas Stanlick's chest |
| 60 | X-ray of Thomas Stanlick's chest |

**1378**

| State Exhibit Number | Description |
|---|---|
| 36 | Photograph of front of Thomas Stanlick's blood stained shirt |
| 12 | Photograph of bloodstained notepad with the words "Daddy, Brian shot us" written on it |
| 13 | Photograph of bloodstained notepad with the words "Dad, I love you" written on it |
| 14 | Photograph of a bloody telephone |
| 11 | Photograph of the dining room floor with one spent shotgun shell |
| 17 | Photograph of two spent twelve gauge shotgun shells |
| 18 | Photograph of two spent twelve gauge shotgun shells |
| 19 | Photograph looking down the hallway into Risch's bedroom with blood in it |
| 24 | Photograph looking down the hallway into Risch's room with blood in it |
| 38 | Videotape film taken by Detective Alan Woda depicting the inside of the Risch farm house shortly after the injured were taken to the hospital |

The court refused to admit the following photographs based on the petitioner's objections:

| State Photograph Number | Description |
|---|---|
| 28 | Photograph of Debra Risch's arm |
| 31 | Photograph of Thomas Stanlick's body, pre-autopsy |
| 32 | Photograph of Thomas Stanlick's right hand showing a gunshot wound |
| 34 | Photograph of Thomas Stanlick as he appeared in life |

The Court will first consider the parties' arguments to the trial court, and then consider the trial court's rulings.

### Exhibits 59 and 60

The State asserted that the X-rays of Thomas Stanlick's abdominal area and of his chest area would be used by Dr. Huntington to show Thomas Stanlick's wounds and the direction and angle of the pellets as they disbursed in his body. The petitioner argued that the X-rays were not relevant. The court found the X-rays to be relevant and not prejudicial.

### Exhibit 36

The State asserted that the photograph of the front half of Thomas Stanlick's shirt was "probably as graphic and probative of evidence of intent as the State ha[d] in this case." Transcript of proceedings on February 25, 1985 at 139. The shirt photograph graphically shows the entry of the shotgun blasts into Thomas Stanlick's body. Transcript at 139. The petitioner objected, arguing that the exhibit is not probative of intent. The petitioner further argued that the photograph is inflammatory because the shirt is bloodsoaked. The court held that it is simply a fact that the shirt was blood-soaked, and the jury should not be surprised by that fact. Transcript at 169. In addition, the court determined that this exhibit presented a good opportunity for the jury to see the juxtaposition of the shots.

### Exhibit 12

The state asserted that the photograph of the notepad corroborated Debra Risch's story that the petitioner did the shooting. The state pointed out that the note was written almost simultaneously with the event. The petitioner objected, arguing that whether he did the shooting was not an issue in the case since he planned on admitting that in opening arguments. Transcript at 161. Nevertheless, the court held that the note underscored the identity of the petitioner, that the petitioner did in fact do the shooting.

### Exhibit 13

The state asserted that Debra Risch thought she was going to die when she wrote "Daddy, I love you," and her state of mind—the entire scene, the entire story—was relevant. The petitioner objected, arguing that the note was irrelevant, and would detract from the petitioner's right to a fair trial. The petitioner conceded that he would not object to any references made to the note through Debra Risch's testimony, but he did object to the photograph of the note. The court held that the note was crucial and relevant as it depicts the state of mind of the victim.

### Exhibit 14

The state asserted that the photograph of the telephone that Debra Risch claims she used when she called for help corroborates the fact that she made those phone calls while severely bleeding from the arm. Transcript at 141. The petitioner objected, arguing that Debra Risch could testify that she used the phone in the kitchen and she was bleeding; that her testimony doesn't need to be corroborated. The court rejected the petitioner's argument.

*Exhibit 38*

The state asserted that the videotaped film of the Risch farmhouse was relevant because it showed the shotgun wads, watchband, and the shotgun shells. The petitioner objected, arguing that there were witnesses that could testify in detail as to the location of the shotgun wads and shells. The petitioner further argued that the film could inflame the passions of the jury to such an extent that the petitioner would be denied his right to a fair, impartial jury. The court allowed the jury to view the film.

*Exhibits 11, 17, 18, 19, and 24*

Exhibits No. 11, 17, 18, 19, and 24 (as well as Exhibits 12, 13, 14, and 38 as discussed above) involved the question whether they were inflammatory because of the sight of blood. The trial court held that the exhibits were not inflammatory.

Mr. Boyle is correct when he says that there is a substantial amount of blood, a lot of blood, as he puts it, in all of these photographs. They do represent photos, as is consistent with the offer of proof, that were taken as quickly as apparently was possible without subsequent disruption by other medical personnel, according to Mr. Haag, and therefore show the scene particularly in relation to locations of shells, which is no small matter notwithstanding the fact that there may be other explanation as to where the shells were by the tossing of the shells by the rifle itself when they were spent from the rifle, but those are all in my opinion probative and can be used and viewed by the jury.

There is a different degree, in the Court's mind, on how I approach the prejudice as to how it shocks me. Obviously, that's the only yardstick I can measure things by, and there are different degrees. Blood in and of itself, well it's a quantity that all of us have seen, certainly not spread around a kitchen and dining room floor as in this. Fortunately, many of us have not seen that as depicted in these photographs, but blood in a jar as opposed to blood on the floor, something that is further removed from the association with body, has a little different impact in my visceral area than does blood which is perhaps spattered over a human face so that the direct association can be made, I think, in the mind as to emotionally reacting to it. And the other point is that, and again perhaps Mr. Boyle argued this point too well, is that there is an expectation that when there are two serious shootings involved, one involving death, is that certainly there is going to be blood, and I think the jury can associate that, and I think they are entitled to see what the scene looked like particularly relative to these important items that the State has noted, so I am going to permit not only the State to use them but have the jury view them at an appropriate point in the testimony.

Transcript of proceedings on February 25, 1985 at 184–186.

*Photographs 28, 31, 32, and 34*

The second class of exhibits are those photographs the trial court held were not viewable by the jury. The court held that photograph 28, Debra Risch's arm, was not viewable by the jury. The court held that the photograph would be stomach-wrenching to the jurors. The court also held that photograph 31, the pre-autopsy photograph of Thomas Stanlick, was not viewable by the jury. The court further held that Photograph 32, Thomas Stanlick's wound, was not viewable by the jury but could be used by Dr. Huntington. Finally, the court held that Photograph 34, the photograph of Thomas Stanlick while he was alive, was not viewable because after the jurors viewed the photograph, they may have been more sympathetic to his family.

After reviewing the trial court's rulings on the exhibits and photographs, and reviewing the photographic exhibits and the videotaped film themselves, this Court is impressed by the thoughtful and deliberate process the trial court used. The trial court applied the appropriate discretionary standards, and its conclusion was not wholly unreasonable nor do the circumstances indicate that the only purpose of the exhibits was to inflame or prejudice the jury.

**1380**

The Court therefore finds that the exhibits were not wrongfully admitted into evidence.

## CONCLUSION

Based on the foregoing, the Court DENIES the petition for a writ of habeas corpus.

SO ORDERED.