Brian L. HAAS, Petitioner–Appellant,

v.

Gordon ABRAHAMSON, Superintendent of the Dodge Correctional Institute, Respondent–Appellee.

No. 89–1446.

United States Court of Appeals, Seventh Circuit.

Argued Sept. 22, 1989.

Decided Aug. 6, 1990.

As Corrected Aug. 7, 1990.

---

Gerald P. Boyle, Milwaukee, Wis., for petitioner-appellant.

Douglas Haag and David Becker, Office of the Atty. Gen., Wisconsin Dept. of Justice, Madison, Wis., for respondent-appellee.

Before CUMMINGS, COFFEY and KANNE, Circuit Judges.

COFFEY, Circuit Judge.

Petitioner Brian Haas appeals the district court's denial of his petition for a writ of habeas corpus, filed pursuant to 28 U.S.C. § 2254. 705 F.Supp. 1370. Haas was convicted in Wisconsin state court of first-degree murder in violation of Wis.Stat. § 940.01 and injury by conduct regardless of life in violation of Wis.Stat. § 940.23 and sentenced to life imprisonment with a consecutive term of 15 years to follow. We affirm.

## I.

Brian Haas and Deborah Risch began dating in August 1983 and dated on a regular basis until the summer of 1984, when Risch expressed her desire to end the relationship and date other people, particularly Thomas Stanlick.[1] According to Risch,

---

1. Both Haas' counsel and the Wisconsin Department of Justice have failed to follow Circuit Rule 28(d)(2), which provides: "No fact shall be stated in the statement of facts unless it is supported by a reference to the page or pages of the record or the appendix where the fact appears." Further, the majority of the references to the record that Haas cites in support of his state-

Haas was very upset about her desire to end the relationship and, on July 30, 1984, threatened to sue her for an amount of money she had borrowed from him if she refused to continue dating him. The following day, July 31, Haas left a note on Risch's car, asking her to forget about Stanlick and resume their relationship. On August 1, 1984, Haas telephoned Risch and asked her to go out with him. Risch refused and told Haas to leave her alone. Shortly thereafter, Haas drove to Risch's house and pounded on the front door, as well as Risch's bedroom window, until Risch allowed him to come inside. Once in the house, Haas asked Risch to engage in sexual intercourse. Despite Risch's refusal, Haas forced her to have sex with him, after which both of them became very upset. According to Risch, Haas stated: "I'm so mad at Tom [Stanlick] that I could kill him for doing this to me. But I don't want to spend the rest of my life in jail."

The following day, August 2, 1984, Risch made a date with Stanlick, who arrived at her house later that evening. While sitting on the front porch, the two noticed Haas' car drive slowly past Risch's house. Haas turned the vehicle around and drove into Risch's driveway, shining his headlights on the porch. Upon seeing Risch and Stanlick, Haas backed out of the driveway at a high rate of speed and drove to a pay telephone, where he phoned Risch. When Risch answered, Haas stated, "You don't waste much time, do you?" and called Risch a "fucking whore," prompting Risch to hang up the telephone. Haas drove to his home, secured his shotgun and drove back to the Risch residence. Haas broke into the house through the back entrance and fired five shots in rapid succession, fatally wounding Stanlick in the chest and abdomen and hitting Risch in the arm and the leg.

On August 3, 1984, a criminal complaint charging Haas with the first-degree murder of Stanlick and the attempted first-degree murder of Risch was filed. On August 27, 1984, the state filed a felony information reiterating the charges in the complaint. Shortly thereafter, Haas entered pleas of not guilty to both charges. Haas did not, however, plead the defense of insanity,[2] which triggers Wisconsin's statutory scheme for a bifurcated criminal trial when an insanity defense is raised. *See* Wis.Stat. § 971.165.[3]

ment of facts are to portions of the state court trial record which, for some unknown reason, were not submitted to the court with Haas' habeas petition. Accordingly, none of the facts allegedly supported by these references to the record have been considered by this court. *See Trotter v. Klincar,* 748 F.2d 1177, 1184 n. 8 (7th Cir.1984) (Appellant bears the responsibility for not assembling an adequate record for this court to review). Thus, our discussion of the facts alleged to be material for purposes of this appeal is based solely on the record that was transmitted to this court.

**2.** Wisconsin's definition of insanity is codified at Wis.Stat. § 971.15, which provides:

"(1) A person is not responsible for criminal conduct if at the time of such conduct as a result of mental disease or defect he lacked substantial capacity either to appreciate the wrongfulness of his conduct or conform his conduct to the requirements of law.

(2) As used in this chapter, the terms 'mental disease or defect' do not include an abnormality manifested only by repeated criminal or otherwise antisocial conduct.

(3) Mental disease or defect excluding responsibility is an affirmative defense which the defendant must establish to a reasonable certainty by the greater weight of the credible evidence."

**3.** In Wisconsin, a defendant desiring to contest his guilt and raise the defense of insanity pleads both not guilty and not guilty by reason of mental disease or defect. Once the two pleas are entered, section 971.165 provides in pertinent part:

"(1) If a defendant couples a plea of not guilty with a plea of not guilty by reason of mental disease or defect:

(a) There shall be a separation of the issues with a *sequential order of proof* in a continuous trial. The plea of not guilty shall be determined first and the plea of not guilty by reason of mental disease or defect shall be determined second.

(b) If the plea of not guilty is tried to a jury, the jury shall be informed of the 2 pleas and that a verdict will be taken upon the plea of not guilty before the introduction of evidence on the plea of not guilty by reason of mental disease or defect. No verdict on the first plea may be valid or received unless agreed to by all jurors.

\* \* \* \* \* \*

(d) If the defendant is found not guilty, the court shall enter a judgment of acquittal and

On October 22, 1984, Haas filed a motion *in limine* for an order from the court allowing him to introduce medical testimony in the nature of psychiatric and/or psychological expert testimony in his defense. The motion *in limine* set forth the following purposes for this expert testimony:

"(I) That at the time of the alleged incident in question:

(a) the defendant was unable to form the requisite intent to take human life in contravention of 940.01 Wis.Stats. and/or

(b) the defendant, because of character defect was experiencing a state of rage that is within the concept of depravity of mind, an element in second degree murder, 940.02 Wis.Stats. and/or

(c) the defendant, because of character defects and because of forces influencing was unable to listen to the exercise of his conscience and as such his judgment was impaired as inherent in the charge of manslaughter, 'heat of passion' as defined in 940.05 Wis.Stats. and/or

(II) To assist the trier of fact in understanding the random nature of the shots that were allegedly fired by the defendant."

Haas then filed a brief setting forth differently stated, but related, grounds for allowing psychiatric and/or psychological testimony to be introduced at trial:

"(1) To give an opinion after examining all the evidence on whether the defendant was able to form the requisite intent to take human life in contravention of 940.01 Wis.Stats.

(2) To explain to the jury the significance of the physical evidence, after analyzing the physical evidence, including but not limited to written correspondence between Haas and Risch, the video tape of the crime scene which illustrates the gunshot pattern, and the police reports explaining the dazed condition Haas was in when he was found.

(3) To explain to the jury what the physical evidence indicates in terms of the stress Haas was under and the effect excessive stress has on people.

(4) To explain to the jury the significance of the physical evidence in relation to the defendant's state of mind and state whether the evidence fits into the concept of depravity of mind or 'heat of passion' manslaughter, lesser included offenses."

The trial court held a hearing on Haas' motion *in limine* on December 3, 1984. No psychiatrist or psychologist testified on behalf of Haas at the hearing, nor was any affidavit setting forth the anticipated testimony of these experts offered. Rather, Haas' counsel summarized what he believed these experts would testify to at trial, specifically stating:

"... I am of the opinion that a doctor would testify that Mr. Haas was acting out of character; that he was not aggressive in nature; that he became an aggressor when he perceived and saw certain things and they influenced his psychological makeup, and I am confused as to whether or not the law will allow me to do that. Clearly on the ultimate question of specific intent to take human life I know I am prohibited from that, but I don't see where I am prohibited from bringing to the jury's attention a doctor's

discharge the defendant. If the defendant is found guilty, the court shall withhold entry of judgment pending determination of the 2nd plea.

 \*   \*   \*   \*   \*   \*

(3)(a) If a defendant is not found not guilty by reason of mental disease or defect, the court shall enter a judgment of conviction and shall either impose or withhold sentence under s. 972.13(2).

(b) If a defendant is found not guilty by reason of mental disease or defect, the court shall enter a judgment of not guilty by reason

of mental disease or defect. The court shall thereupon proceed under s. 971.17. A judgment entered under this paragraph is interlocutory to the commitment order entered under s. 971.17 and reviewable upon appeal therefrom."

At the time of Haas' conviction, the statute governing the entry of insanity pleas was codified at Wis.Stat. § 971.175. In 1987, the statute was repealed and recodified, as amended, at Wis. Stat. § 971.165; however, the amended version contains no substantial changes relevant to the issues raised in this appeal.

opinion as to what Mr. Haas was at the time in question, what he was all about before, during and after the fact, and to allow the jury to accept or reject that information when it comes to the ultimate question [of intent]....

I am not making a specific offer of proof except sufficiently enough to say that both of the professionals whose name I have mentioned would indeed testify basically in the manner and form in which I have stated; that this young man had experienced great trauma in regards to his relationship with this young lady; that he was under great stress; that the relationship was the kind of relationship with the kind of loyalty and devotion that perhaps is more exhibited by the very strong marital tie between a husband and wife; that he was confused by some of the responses he was receiving; that when he saw certain things that he saw on the day in question he became extremely agitated and provoked and that upon his returning back to the farm after having—or the house after having retrieved or gotten the shotgun he continued to perceive certain things and perceiving what he was seeing going on inside the house caused him to, in effect, explode not in a psychiatric sense of insanity but certainly rage of great proportion....

The jury is ultimately going to ask itself the question of why did this youngster who otherwise was of wholesome character do something as dastardly as what we have heard here in the courtroom; and I think it fair play for a jury to be able to hear about how this boy was so devoted and had these imaginary kind of feelings about what his future was going to be because of this relationship with this young lady only to find it all go up in smoke and what effect that had on him; that he became enraged, that he acted out of character, that based upon their

analysis of him and psychological testing that Brian Haas was not an aggressive young man, he was very passive...."

On December 22, 1984, the trial court denied Haas' motion, finding that the proffered psychiatric testimony was barred under *Steele v. State*, 97 Wis.2d 72, 294 N.W.2d 2 (1980), in which the Wisconsin Supreme Court held that psychiatric opinion testimony on the issue of a defendant's capacity to form criminal intent is inadmissible if the opinion is based on the defendant's mental health history. The trial court also found that the proffered testimony was neither relevant nor probative and was inadmissible "as either lay or opinion testimony, it being neither rationally based upon the perception of the witness nor upon the scientific, technical or other specialized knowledge of the witness."

Haas' trial commenced on February 25, 1985, and concluded with the jury returning a verdict finding him guilty of the crime of murder in the first degree as to Thomas Stanlick. As to Deborah Risch, the jury found Haas guilty of injury by conduct regardless of life, a lesser included offense of attempted first-degree murder. The trial court sentenced Haas to the mandatory term of life imprisonment for the crime of first-degree murder with a consecutive term of 15 years on the conviction for inflicting injury by conduct regardless of life.[4] The Wisconsin Court of Appeals affirmed Haas' conviction in an unpublished opinion, and the Wisconsin Supreme Court denied review. Having exhausted his state court remedies, Haas filed a petition for a writ of habeas corpus in the United States District Court for the Eastern District of Wisconsin arguing, *inter alia*, that the trial court's refusal to admit the proffered psychiatric/psychological testimony violated his right to a fair trial.[5] The district court denied Haas' petition, finding that his proposed psychiatric testimony was inadmissible under *Steele v. State, supra*, and

4. *See* Wis.Stat. §§ 939.50 and 939.63.

5. Haas also argued that he was entitled to a writ of habeas corpus based on his allegations that the jury's verdicts were logically inconsistent and that the trial court erred in admitting photographs of the Risch home after the shooting

took place. The district court rejected these arguments in its order denying Haas' habeas petition. Haas has not challenged the district court's disposition of these issues on appeal. Thus, we need not consider these issues.

that this court, in *Muench v. Israel*, 715 F.2d 1124 (7th Cir.1983), *cert. denied*, 467 U.S. 1228, 104 S.Ct. 2682, 81 L.Ed.2d 878 (1984), held that Wisconsin's rule, enunciated in *Steele*, of barring psychiatric opinion testimony on the issue of capacity to form criminal intent is not constitutionally infirm.

On appeal Haas maintains that he had a constitutional right to present psychiatric and psychological opinion testimony on the following questions: (1) whether he had the capacity to form the specific intent to kill required for a first-degree murder conviction under Wis.Stat. § 940.01; (2) whether the evidence demonstrated that he was under an excessive amount of stress at the time of the shooting, and how stress affects a person's state of mind; and (3) "whether the evidence fits into the concept of depravity of mind or 'heat of passion' manslaughter, lesser included offenses [of first-degree murder]." Haas contends that the trial court's exclusion of this evidence violated his right to present evidence in his defense, thereby depriving him of a fair trial.

## II.

■ At the outset, we note several well-established principles regarding our habeas corpus jurisdiction under 28 U.S.C. § 2254. Specifically, our review of state court convictions is limited to questions of federal unconstitutional custody. In other words, "[f]ederal courts can grant habeas relief only when there is a violation of federal statutory or constitutional law." *United States ex rel. Lee v. Flannigan*, 884 F.2d 945, 952 (7th Cir.1989). *See Wainwright v. Goode*, 464 U.S. 78, 83–84, 104 S.Ct. 378, 381–82, 78 L.Ed.2d 187 (1983); *Smith v. Phillips*, 455 U.S. 209, 221, 102 S.Ct. 940, 948, 71 L.Ed.2d 78 (1982). Thus, state court evidentiary rulings, because they are a matter of state law, will rarely serve as a proper basis for granting a writ for habeas corpus. *See Cramer v. Fahner*, 683 F.2d 1376, 1385 (7th Cir.), *cert. denied*, 459 U.S. 1016, 103 S.Ct. 376, 74 L.Ed.2d 509 (1982). Unless the petitioner demonstrates that "a specific constitutional right has been violat-

ed, a federal court can issue a writ of habeas corpus only when a state evidentiary ruling violates the defendant's due process rights by denying him a fundamentally fair trial." *Flannigan*, 884 F.2d at 953; *Woodruff v. Lane*, 818 F.2d 1369, 1373 (7th Cir.1987); *Burrus v. Young*, 808 F.2d 578, 581 (7th Cir.1986); *United States ex rel. Foster v. DeRobertis*, 741 F.2d 1007, 1014 (7th Cir.1984).

■ As noted above, Haas was charged with the first-degree murder of Stanlick and the attempted first-degree murder of Risch. Under Wisconsin law, the state was required to prove that Haas had the specific intent to kill Stanlick and Risch, respectively, in order to convict him of these charges. *State v. Dix*, 86 Wis.2d 474, 273 N.W.2d 250 *cert. denied*, 444 U.S. 898, 100 S.Ct. 205, 62 L.Ed.2d 133 (1979); *State v. Cartagena*, 99 Wis.2d 657, 299 N.W.2d 872 (1981). Haas argues that "because in many cases the only evidence that exists to negate specific intent may be a psychiatrist who will testify that in his expert opinion a person could not form the [requisite] specific intent," he had a constitutional right to present the proffered psychiatric testimony to rebut the state's proof on the question of whether he had the requisite intent to kill under Wis.Stat. § 940.01. The gist of Haas' argument on appeal is that psychiatry and psychology are "relevant, legitimate areas of medicine that can assist jurors in their determinations of fact" and that Wisconsin's practice of recognizing psychiatric/psychological opinion testimony as relevant and competent on the issue of insanity, but excluding it as irrelevant and incompetent when offered to establish a defendant's lack of specific criminal intent is arbitrary and, thus, violative of due process.

### A.

Before addressing the merits of Haas' arguments, we note that this is the third occasion in twelve years that this court has been asked to invalidate as unconstitutional Wisconsin's rule barring psychiatric and psychological opinion testimony on the question of whether a defendant had the

capacity to form the intent to kill under the state's first-degree murder statute, Wis. Stat. § 940.01.[6] The initial opportunity to address this question presented itself in *Hughes v. Mathews,* 576 F.2d 1250 (7th Cir.), *cert. dismissed sub nom. Israel v. Hughes,* 439 U.S. 801, 99 S.Ct. 43, 58 L.Ed.2d 94 (1979), in which the defendant, after being convicted of first-degree murder in Wisconsin state court, successfully petitioned the federal district court for a writ of habeas corpus based on the state trial court's refusal to allow the defendant's psychiatrist to testify that an abnormal mental condition prevented the defendant from forming the specific intent to kill. *See Hughes v. Mathews,* 440 F.Supp. 1272 (E.D.Wis.1977). This court affirmed the issuance of the writ, "recogniz[ing] the due process right of the defendant to present relevant and competent evidence in the absence of valid state justification for excluding such evidence." 576 F.2d at 1259. Based on Wisconsin's use of psychiatric testimony on the questions of competency to stand trial and insanity, the *Hughes* court initially concluded that "in Wisconsin psychiatric testimony is relevant evidence on issues regarding a defendant's mental state including the question of whether the defendant had the capacity to form specific ... intent" and that "psychiatric testimony is generally considered competent evidence in Wisconsin." *Id.* at 1256–58.

> "Having thus determined that psychiatric testimony was relevant and competent under state law, we acknowledged that the right of a defendant to present such evidence may ' "bow to accommodate other legitimate interests in the criminal trial process," ' and proceeded to 'closely examine [ ]' the 'two main justifications' for the Wisconsin practice. *Id.* [at 1258] (citation omitted). The first

justification—the fear that the guilty would be absolved of criminal liability—was considered 'unpersuasive in the present case where the testimony was offered only to show that a second-degree murder conviction was proper,' but we expressly reserved judgment on the sufficiency of this justification in other circumstances. *Id.* Regarding the second justification—ensuring the integrity of Wisconsin's bifurcated trial system—'confining ourselves to the facts of [Hughes'] case' we noted that no bifurcated trial occurred, and that Hughes had 'admitted the act' and argued only he lacked intent to kill. We thus concluded that the state's second justification (based on the concerns about duplicative evidence, and self-incrimination concerns) was 'not applicable here.' *Id.* at 1257."

*Muench v. Israel,* 715 F.2d at 1134–35. Accordingly, the *Hughes* court held that the defendant's right to present relevant and competent evidence had been violated. In so holding, however, the court explicitly stated that it was neither "impos[ing] a 'diminished responsibility' defense for emotional problems upon Wisconsin" nor "attempt[ing] to further 'constitutionalize' the law of evidence of constructing a constitutional right to introduce psychiatric testimony." *Id.* at 1259.

The *Hughes* court's conclusions as to the relevancy and competency of psychiatric testimony regarding a criminal defendant's capacity to form the requisite intent to kill were rejected by the Wisconsin Supreme Court in *Steele v. State,* 97 Wis.2d 72, 294 N.W.2d 2 (1980).[7] The defendant in *Steele* was convicted of first-degree murder after pleading not guilty and not guilty by reason of mental disease or defect. Although extensive evidence concerning the defendant's psychiatric and personal history was admitted during the guilt portion of the

---

**6.** Actually, in *Burrus v. Young, supra,* this court was confronted with another challenge to the exclusion of psychiatric testimony in a Wisconsin criminal trial. However, the *Burrus* majority decided that case without confronting Wisconsin's rule of excluding such testimony on the issue of intent. *See id.,* 808 F.2d at 581. The rule was discussed only in the concurring opinion. *Id.* at 581–95 (Coffey, J., concurring).

**7.** The Wisconsin Supreme Court followed *Hughes* in *Schimmel v. State,* 84 Wis.2d 287, 267 N.W.2d 271 (1978), without questioning the *Hughes* court's interpretations of Wisconsin law. *Schimmel* was overruled in *Steele.* 97 Wis.2d at 76, 294 N.W.2d at 3.

bifurcated trial, the trial court excluded the testimony of three expert witnesses who would have given opinions on the defendant's capacity to form the intent to kill. The defendant appealed his conviction, arguing that the exclusion of this testimony deprived him of the right to present a defense.

In affirming the defendant's conviction, the Wisconsin Supreme Court questioned "the accuracy of [the *Hughes* court's] blanket characterization of psychiatric evidence on the causative element of intent as being both competent and relevant." *Id.* at 93, 294 N.W.2d at 11. Specifically, the *Steele* court stated:

> "Basically, the United States Court of Appeals in *Hughes* confused the purpose for which psychiatric testimony is relevant and competent, in some instances, with those in which competency, relevancy, usefulness, and probativeness is highly suspect. The determination of capacity to form an intent—to find whether or not the alleged offender intended to do, in the sense of the criminal law, what he in fact did—requires a fine tuning of an entirely different nature than that required for the admission of evidence on the general question of insanity for the determination of whether or not there should be criminal responsibility.
>
> Whether or not there should be criminal responsibility is essentially a moral issue. Is it just, in light of the ethics and standards of our society, to hold a person who is insane accountable for what has been done. To make that determination requires no fine tuning. It is, rather, a gross evaluation that a person's conduct and mental state is so beyond the limits of accepted norms that to hold him criminally responsible would be unjust. This is a far cry from accepting testimony which purports to prove or disprove a specific intent, as distinguished from criminal responsibility. While some courts may have blind faith in all phases of psychiatry, this court does not. There is substantial doubt whether evidence such as was sought to be introduced here is scientifically sound, and there is substantial legal doubt that it is probative on the point for which it was asserted in this case. We commented in an earlier case that this court has frequently been dismayed by the examination of trial court records which showed a marked propensity of those who purport to have psychiatric expertise to tailor their testimony to the particular client whom they represent.... Nor are we convinced that even careful cross-examination in this esoteric and largely unproved field is likely to reveal the truth. The problem is difficult enough when evaluating the gross standard of insanity in terms of criminal responsibility. It is intolerable when attempting to determine specific intent.
>
> We conclude that, under the present state of the law, the proffered evidence is neither competent, relevant, nor probative for the purpose asserted in the instant case. Thus, in addition to the fact that the admission of the psychiatric evidence in the guilt phase of the bifurcated trial would put in jeopardy safeguards designed for the protection of the defendant, as well of society, and in addition to the problems of the duplicative evidence in the various stages of the bifuracted trial which result in cumulative evidence and jury confusion, we conclude that the evidence itself is suspect and is properly excluded. The exclusion is proper in either a single phase trial or the guilt phase of a bifurcated trial."

*Id.* at 96–97, 294 N.W.2d at 13–14 (citations omitted).[8]

Approximately three years later, this court, in *Muench v. Israel*, 715 F.2d 1124 (7th Cir.1983), *cert. denied*, 467 U.S. 1228,

8. The Wisconsin Supreme Court's holding in *Steele* applied only to the admissibility of psychiatric opinion testimony in the guilt phase of a bifurcated trial. Thus, the court's statement that such testimony is also inadmissible in a single phase trial where the insanity defense had not been raised is *dicta*. *Id.* at 97, 294 N.W.2d at 14. However, the Wisconsin courts have subsequently applied the *Steele* exclusionary rule in the context of a single phase trial. *See State v. Flattum*, 122 Wis.2d 282, 361 N.W.2d 705 (1984); *State v. Dalton*, 98 Wis.2d 725, 298 N.W.2d 398 (Ct.App.1980).

104 S.Ct. 2682, 81 L.Ed.2d 878 (1984), was again confronted with the constitutionality of Wisconsin's prohibition against psychiatric testimony on the issue of a defendant's capacity to form the intent to kill. This court's decision in *Muench* was the culmination of the consolidated appeals of two defendants, Muench and Worthing, who had been convicted of first-degree murder in Wisconsin state court. Both filed habeas petitions challenging the constitutionality of Wisconsin's practice of barring psychiatric/psychological opinion testimony on the issue of capacity to form the intent to kill necessary to convict an accused of the crime of first-degree murder (Wis.Stat. § 940.01). Moreover, the defendants specifically challenged the Wisconsin Supreme Court's determination in *Steele* that such testimony was irrelevant and incompetent. The *Muench* court viewed the petitioners' contentions as an attempt to impose, as a matter of federal constitutional law, the doctrine of diminished capacity on the state of Wisconsin.[9]

After an exhaustive discussion of the history of Wisconsin's insanity defense,[10] bifurcated trial system,[11] and the rule barring psychiatric/psychological opinion testimony,[12] the *Muench* court held that Wisconsin's rule excluding such testimony on the issue of capacity to form specific intent is not so lacking in legal foundation that it is violative of due process. In so holding, the *Muench* majority relied primarily on three cases from the United States Supreme Court addressing the question of whether criminal defendants have a constitutional right to present evidence of psychiatric abnormalities which fall short of legal insanity to establish lack of capacity to form intent to kill: *Troche v. California*, 280 U.S. 524, 50 S.Ct. 87, 74 L.Ed. 592

(1929) (per curiam); *Coleman v. California*, 317 U.S. 596, 63 S.Ct. 162, 87 L.Ed. 487 (1942) (per curiam); and *Fisher v. United States*, 328 U.S. 463, 66 S.Ct. 1318, 90 L.Ed. 1382 (1946).

In *Troche* and *Coleman*, the petitioners had been convicted of first-degree murder in California state court after their requests to present evidence of mental abnormalities in the guilt phase of their bifurcated trials had been denied. In both cases, the Supreme Court dismissed the petitioner's appeal for want of a substantial federal question. *See Muench*, 715 F.2d at 1138–40. As we noted in *Muench*, the Court's dismissals of these cases "[are], of course, ... decision[s] on the merits of the questions presented in the appeal[s]; [they are] holding[s] that the federal questions are insubstantial and [are] binding on this court unless subsequent Supreme Court decisions indicate otherwise." *Id.* at 1139 (citing *Hicks v. Miranda*, 422 U.S. 332, 343–45, 95 S.Ct. 2281, 2288–90, 45 L.Ed.2d 223 (1975)).

In *Fisher*, the petitioner had been convicted of first-degree murder in the District of Columbia, and argued that the trial court erred in refusing to instruct the jury that it should consider his abnormal personality in determining the issue of intent. The Court rejected this argument, concluding that:

"It may be that psychiatry has now reached a position of certainty in its diagnosis and prognosis which will induce Congress to enact the rule of responsibility for crime for which petitioner contends. For this Court to force the District of Columbia to adopt such a requirement for criminal trials would involve a fundamental change in the common law theory of responsibility.

---

**9.** Although recognizing that courts and commentators had given different meanings to the terms "diminished capacity" and "diminished responsibility," the *Muench* court concluded:

"[T]he courts have used the labels diminished responsibility, diminished capacity, and other nomenclature merely as a shorthand for the proposition that expert evidence of medical abnormalities is admissible on the question of whether the defendant in fact possessed a particular mental state which is an element of

the charged offense.... When a court rejects the doctrine of diminished capacity, it is saying that psychiatric evidence is inadmissible on the mens rea issue."
*Id.* at 1143.

**10.** *Id.* at 1130–31.

**11.** *Id.* at 1131–33.

**12.** *Id.* at 1133–37.

We express no opinion upon whether the theory for which petitioner contends should or should not be made the law of the District of Columbia. Such a radical departure from common law concepts is more properly a subject for the exercise of legislative power or at least for the discretion of the courts of the district. The administration of criminal law in matters not affected by Constitutional limitations or a general federal law is a matter peculiarly of local concern."

*Id.*, 328 U.S. at 476, 66 S.Ct. at 1324-25.

Based on these Supreme Court decisions, the *Muench* court stated:

"In our view, *Troche, Coleman,* and *Fisher* are dispositive of the question presented in the instant case. *Troche* and *Coleman* deemed petitioners' due process arguments as insubstantial, and *Fisher* carefully considered the same arguments and did not even find them sufficiently compelling to justify an exercise of the Court's supervisory authority over the District of Columbia courts. A theory that the Supreme Court has twice refused to impose upon the state of California, albeit in summary decisions, and has refused to impose upon the District of Columbia courts under its supervisory powers, is not one that this lower federal court will impose on the state of Wisconsin as a matter of federal constitutional due process."

715 F.2d at 1141. Accordingly, the *Muench* court held "that a state is not constitutionally compelled to recognize the doctrine of diminished capacity and hence a state may exclude expert testimony offered for the purpose of establishing that a criminal defendant lacked the capacity to form a specific intent." *Id.* at 1144-45.

### B.

Initially, Haas contends that we should overrule our decision in *Muench* and hold unconstitutional Wisconsin's practice of excluding psychiatric opinion testimony on the issue of capacity to form specific intent to kill in first-degree murder cases. We note that principles of *stare decisis* require that we "give considerable weight to [prior decisions of this court] unless and until they have been overruled or undermined by the decisions of a higher court, or other supervening developments, such as a statutory overruling." *Colby v. J.C. Penney Co.*, 811 F.2d 1119, 1123 (7th Cir.1987). However, we are cognizant of the fact that we are "not absolutely bound by them, and must give fair consideration to any *substantial* argument that a litigant makes for overruling a previous decision." *Id.* (emphasis added). Thus, Haas is confronted with a difficult task in attempting to persuade this court to abandon our holding in *Muench*. This is especially true in the case before us, given the *Muench* court's reliance on the Supreme Court's dismissals of similar challenges to state evidentiary rules in *Troche* and *Coleman,* as well as its refusal in *Fisher* to require the District of Columbia to recognize psychiatric opinion testimony as a relevant factor on the question of intent to kill. Indeed, we will not attempt to reinterpret Wisconsin law in this area—and risk an erroneous interpretation as in *Hughes v. Mathews*—absent a showing that Haas' claim raises a federal question. *See Burrus v. Young*, 808 F.2d at 586 (Coffey, J., concurring).

Despite his heavy burden in this regard, Haas—or more appropriately, his attorney—has failed to present any case law from the Supreme Court, this court or, for that matter, any other court casting doubt on, much less disapproving of or disagreeing with, our holding in *Muench*. Rather, Haas urges us to adopt the views expressed in Judge Cudahy's dissenting opinion in that case. *See id.*, 715 F.2d at 1145-48 (Cudahy, J., dissenting). Although rearguing a position taken in a dissenting opinion without citation to authority supporting the dissent's views is hardly a substantial argument for overruling a prior case, Judge Cudahy's position in *Muench* provides us with a suitable framework for analyzing Haas' due process challenge to Wisconsin's practice of barring psychiatric opinion testimony on the question of a defendant's capacity to form the intent to kill.

Although recognizing that this court is bound by the Supreme Court's decisions in *Troche, Coleman* and *Fisher,* Judge Cu-

dahy was of the opinion that "our understanding of these cases must be informed by the subsequent Supreme Court decisions in *Washington v. Texas,* 388 U.S. 14, 87 S.Ct. 1920, 18 L.Ed.2d 1019 (1967), and *Chambers v. Mississippi,* 410 U.S. 284, 93 S.Ct. 1038, 35 L.Ed.2d 297 (1973)." *Id.* at 1145 (Cudahy, J., dissenting). In both *Washington* and *Chambers,* the Supreme Court recognized that a criminal defendant has a fundamental right to present evidence and witnesses in his own behalf. *Chambers,* 410 U.S. at 294, 93 S.Ct. at 1045; *Washington,* 388 U.S. at 18–19, 87 S.Ct. at 1922–23. Based on these cases, this court has also recognized such a right on the part of a criminal defendant. *See Stomner v. Kolb,* 903 F.2d 1123, 1128–29 (7th Cir.1990); *Burrus,* 808 F.2d at 581. This right is violated when the state has recognized the relevance of a certain category of evidence and the competence of various witnesses to testify thereto, but has arbitrarily prevented the defendant from presenting the evidence and/or the witnesses in a given instance. *Hughes v. Mathews,* 576 F.2d at 1256. Based on the recognition of this right in *Washington* and *Chambers,* Judge Cudahy concluded that Wisconsin's characterization of psychiatric opinion testimony as irrelevant and incompetent was violative of due process.

Judge Cudahy's chief criticism of the Wisconsin practice is that "the state's broad exclusionary rule apparently will have the effect of excluding certain psychiatric testimony which would appear to be of exceptional value in clarifying the *mens rea* issues for the jury." *Id.* at 1146 (Cudahy, J., dissenting). Citing as examples psychiatric testimony relating the fact of a defendant's lobotomy operation and a defendant with an "abnormally low threshold of fear," Judge Cudahy opined that "a psychiatrist's testimony on the nature of such a defendant's mental defects would seem to be helpful." *Id.* While it is beyond dispute that the Wisconsin rule would "have the effect of excluding certain psychiatric testimony," the rule, in fact, excludes a very narrow category of psychiatric testi-

mony. Specifically, the only such testimony barred under the rule enunciated in *Steele* is "psychiatric opinion testimony on the issue of capacity to form intent when that opinion is grounded on the defendant's mental health history." *State v. Flattum,* 122 Wis.2d 282, 302, 361 N.W.2d 705, 716 (1985). In *Flattum,* the Wisconsin Supreme Court explicitly stated:

> "While the admissibility of [the defendant's] psychiatric history was not an issue in the *Steele* case, we find, as the *Steele* case implicitly did, that either psychiatric testimony or lay testimony detailing the psychiatric and personal history of the defendant may be admitted, if relevant, to cast doubt upon or to prove the defendant's intent to commit the crime charged. What we prohibited in *Steele* was utilizing that testimony as a basis for eliciting psychiatric opinion testimony on the issue of capacity to form intent."

*Id.* at 303, 361 N.W.2d at 716. *Accord State v. Repp,* 122 Wis.2d 246, 256, 362 N.W.2d 415, 419 (1985) ("Had [the defendant's psychiatrist] limited his testimony to a description of relevant clinical facts regarding the defendant's mental health history, this too would have been admissible."). In light of the Wisconsin Supreme Court's statements concerning *Steele* in the *Flattum* and *Repp* decisions, it would appear that Judge Cudahy's fears that the rule enunciated in *Steele* would apply broadly to exclude the majority of relevant mental health testimony are unfounded. If the limited scope of Wisconsin's exclusionary rule was not apparent from the *Steele* opinion itself, it has become so in view of the interpretations of *Steele* in *Flattum* and *Repp.*[13]

The Wisconsin Supreme Court's interpretation of *Steele* in these cases would also seem to contradict Judge Cudahy's conclusion that Wisconsin's practice of excluding expert testimony on the defendant's capacity to form the intent to kill "seems inconsistent with its willingness to allow the jury to hear all manner of testimony on the

---

**13.** We, of course, are bound by the Wisconsin Supreme Court's interpretation of Wisconsin

law. *See Burrus v. Young, supra,* 808 F.2d at 581.

very same subject without any expert component." *Muench*, 715 F.2d at 1145 (Cudahy, J., dissenting). As the *Flattum* court stated: "[E]ither psychiatric testimony or lay testimony detailing the psychiatric and personal history of the defendant may be admitted to cast doubt upon ... the defendant's intent to commit the crime charged." 122 Wis.2d at 303, 361 N.W.2d at 716.

Judge Cudahy's final asserted reasons for holding Wisconsin's exclusionary rule unconstitutional was based on the *Steele* court's acknowledgement that the standards for establishing legal insanity under Wisconsin law and the lack of capacity to form the intent to kill are "very similar." *See Steele*, 97 Wis.2d at 88, 294 N.W.2d at 9. Based on this statement, Judge Cudahy concluded that "psychiatric testimony on similar concepts might be assumed to carry similar expectations of reliability." *Muench*, 715 F.2d at 1147 (Cudahy, J., dissenting) (quoting Note, *Restricting the Admission of Psychiatric Testimony on a Defendant's Mental State: Wisconsin's Steele Curtain*, 1981 Wis.L.Rev. 733, 761–62). This conclusion, however, ignores the fact that in Wisconsin "a finding of legal insanity is not a finding of inability to intend; it is rather a finding that under the applicable standard or test, the defendant is to be excused from criminal responsibility for his acts." *State v. Hebard*, 50 Wis.2d 408, 420–21, 184 N.W.2d 156, 163 (1971). "Whether or not there should be criminal responsibility is essentially a moral issue.... It is ... a gross evaluation that a person's conduct and mental state is so beyond the limits of accepted norms that to hold him criminally responsible would be unjust." *Steele*, 97 Wis.2d at 96, 294 N.W.2d at 13. Thus, it is clear that Wisconsin's insanity defense is not predicated "on the belief that an insane person is not able to intend an act." *See Repp*, 122 Wis.2d at 261, 362 N.W.2d at 421. This view is supported by the positions taken by two respected commentators who have criticized the use of expert psychiatric testimony on the issue of capacity to form a specific criminal intent, such as intent to kill. As one commentator noted:

"[T]here is no necessary connection between a judgment about the defendant's criminal responsibility and his mental capacity to entertain the state of mind required by the crime. As long as the *mens rea* element is defined in terms of the conscious mind, cognitive and affective functions, it is perfectly plausible that the defendant entertained the specific mental state but was still insane. In fact, most mentally abnormal offenders are fully capable of thinking about their criminal act before they do it, turning it over in their minds, planning the act, and then performing it in accordance with their preconceived plan. Evidence of how [a defendant's] mental abnormality impaired his behavior controls or made it difficult for him to appreciate the act's gravity does not negate the existence of the required mental states; it merely explains them."

Arenella, *The Diminished Capacity and Diminished Responsibility Defenses: Two Children of a Doomed Marriage*, 77 Colum.L.Rev. 827, 834 (1977). Another commentator has stated that "[p]ersons crazy enough to be legally insane are not necessarily lacking *mens rea*. Even defendants who are most demonstrably legally insane rarely lack the *mens rea* for the highest charged offense." Morse, *Undiminished Confusion in Diminished Capacity*, 75 J.Crim.L. & Criminology 1, 18 (1984).

"[One] counterargument [to this view] is that '[o]ne can only "intend," in the *mens rea* sense, if one possesses the capacity to choose a course of action and to substantially understand the nature of this choice.' This is an *ipse dixit*, not an argument, however. Moreover, what does it mean to say that a crazy defendant does not 'choose' his behavior? Is intentional behavior motivated by a delusion any less 'chosen' than intentional behavior motivated by rational reasons? Moreover, 'intend' does not intrinsically mean that one understands the nature of the 'choice.' Intentional behavior motivated by normal ignorance is no less intentional than similar behavior motivated by delusions. Crazy actors are ex-

cused because they are crazy, not typically, because their conduct is unintended. These confusions cause ... absurdities in mental health testimony.... This whole confusion is, of course, compounded if the mental health professional believes that mental abnormality necessarily relieves an actor of responsibility for his acts, despite the mental state with which these acts may have been carried out. These sorts of confusions and absurdities can be avoided only if judges remember that mental elements are cognitive and common-sensically defined."

*Id.* at 39–40. Thus, it is abundantly clear that the issues of insanity and intent, although related, are not identical and the relevancy of expert psychiatric opinion testimony as it relates to these issues may not be collapsed into a single inquiry. The Wisconsin Supreme Court properly gave separate consideration to the relevancy and competency of this testimony as it relates to the issues of intent and insanity. *See Burrus v. Young,* 808 F.2d at 587 (Coffey, J., concurring) (noting the Wisconsin rule that in determining whether a witness is qualified as an expert, it is the particular qualification of the witness *in relation to the particular issue* which should control, rather than the label of a profession or trade) (emphasis added). We therefore refuse to invalidate Wisconsin's exclusionary rule on this basis. The relevant inquiry thus becomes whether the Wisconsin Supreme Court's determination that psychiatric opinion testimony on the question of a defendant's capacity to form the intent to kill is irrelevant and incompetent "is so without legal foundation that it offends due process." *Muench,* 715 F.2d at 1144.

Under Wisconsin law, evidence not having a tendency to prove any fact bearing on a material issue in the case is irrelevant and should be excluded. Wis.Stat. § 904.01; *State v. Alsteen,* 108 Wis.2d 723, 730, 324 N.W.2d 426, 429 (1982). Haas essentially argues that because the government was required to establish his intent to kill, he was entitled to offer psychiatric opinion testimony tending to disprove his capacity to form that intent. We disagree. "It is naturally tautological that one who lacks the capacity to do something could not have done that something." *Muench,* 715 F.2d at 1144. Thus, whether a defendant has the capacity to form a specific intent to kill is logically connected to whether the defendant, in fact, formed that intent. "Commentators have agreed, however, that only in the most extraordinary circumstances could a defendant actually lack the capacity to form *mens rea* as it is normally understood in American law." *United States v. Pohlot,* 827 F.2d 889, 903 (3d Cir.1987). As Professor Morse aptly stated:

"It is absurd to claim that a defendant who clearly did have a *mens rea* lacked the capacity to have it. By contrast, however, a defendant who had the capacity to form a *mens rea* did not necessarily form it. All persons at all times possess abilities or capabilities that they do not exercise. Moreover, because most defendants, including the most severely mentally disordered, will be capable of forming *mens rea,* knowing that the defendant possessed the capacity to form a *mens rea* is not *per se* terribly probative on the ultimate legal question, which is whether he formed it in fact. Except in the extremely rare case in which it is possible that the defendant truly lacked the capacity to form *mens rea,* the capacity issue is largely irrelevant, and courts would do better to focus entirely on the actuality question. Even in those rare cases, it will still be better to avoid the capacity issue, because innocence can be more directly and certainly proven by showing that no *mens rea* was formed in fact, and also because testimony about capacity is generally too speculative to be admissible. Except in utterly rare cases that will generally be obvious to anyone and will rarely involve the criminal justice system, mental health professionals cannot determine if a person lacks the ability to form a *mens rea,* especially if the determination involves a judgment about the person's past capacities. There is simply no way to know this, no scientific test or technique that can provide the answer. Of course, the

claim that the person had the capacity to form a *mens rea* will almost always be correct, because we know this is true from everyday observation and common sense. Assessing whether a person could not have formed a mental state, however, is beyond current capabilities. If a mental state is not formed, we can never be certain whether the defendant simply did not form it or whether he could not. Testimony concerning lack of capacity to form *mens rea* is far too speculative to be helpful to the factfinder."

Morse, *supra*, at 43–44. *See also* Arenella, *supra*, at 834.

It is noteworthy that Congress, after considering the views of Professors Morse and Arenella,[14] among others, enacted Fed. R.Evid. 704(b) as part of the Insanity Defense Reform Act of 1984, Pub.L. No. 98–473, § 406, 98 Stat. 2067–68 (1984). Rule 704(b) provides:

"No expert witness testifying with respect to the mental state or condition of a defendant in a criminal case may state an opinion or inference as to whether the defendant did or did not have the mental state or condition constituting an element of the crime charged or of a defense thereto. Such ultimate issues are matters for the trier of fact alone."

This court has interpreted the rule to preclude psychiatric opinion testimony on the question of a defendant's capacity to form the requisite intent. *See United States v. Hillsberg*, 812 F.2d 328, 332 (7th Cir.1987). *See also United States v. Bartlett*, 856 F.2d 1071, 1081 (8th Cir.1988).

Our reading of Rule 704(b) convinces us that it has the same practical effect as Wisconsin's exclusionary rule concerning psychiatric opinion testimony: Both rules exclude psychiatric/psychological opinion testimony on the question of whether a defendant had the capacity to form the requisite intent constituting an element of the charged offense while allowing *rele-*

*vant* expert testimony detailing the defendant's mental health history which might have a tendency to negate the prosecution's proof on the issue of intent. *Compare Hillsberg*, 812 F.2d at 332 *with Flattum*, 122 Wis.2d at 303, 361 N.W.2d at 716. It would be anomalous indeed for this court to hold unconstitutional a state evidentiary rule that is virtually identical to the rule of evidence used in the federal system.

We also note that a number of other states in addition to Wisconsin have prohibited, either by statute or case law, the introduction of psychiatric/psychological opinion testimony on the "ultimate" issue of a defendant's capacity to form specific intent. *See State v. Laffoon*, 125 Ariz. 484, 610 P.2d 1045 (1980); Cal. Penal Code §§ 25(a), 28(a) and 29; Conn.Gen.Stat. § 54–86i; *Bethea v. United States*, 365 A.2d 64 (D.C.1976), *cert. denied*, 433 U.S. 911, 97 S.Ct. 2979, 53 L.Ed.2d 1095 (1977); *Zeigler v. State*, 402 So.2d 365 (Fla.1981), *cert. denied*, 455 U.S. 1035, 102 S.Ct. 1739, 72 L.Ed.2d 153 (1982); *State v. Hobson*, 234 Kan. 133, 671 P.2d 1365 (1983); *State v. Edwards*, 420 So.2d 663 (La.1982); *Johnson v. State*, 292 Md. 405, 439 A.2d 542 (1982); *People v. Atkins*, 117 Mich.App. 430, 324 N.W.2d 38 (1982); *State v. Bouwman*, 328 N.W.2d 703 (Minn.1982); *Dawson v. State*, 84 Nev. 260, 439 P.2d 472 (1968); *State v. Wilcox*, 70 Ohio St.2d 182, 436 N.E.2d 523 (1982); *Smith v. State*, 564 P.2d 1194 (Wyo.1977). Although the laws of other jurisdictions are not determinative of the constitutionality of Wisconsin's exclusionary rule, the fact that other states, as well as the federal system, have enacted similar rules "is itself plainly worth considering in determining whether [Wisconsin's rule] offends due process...." *Muench*, 715 F.2d at 1142 (citation omitted).

Finally, our research reveals that only two other circuits have addressed the question of whether a state is constitutionally required to allow expert psychiatric opinion

---

**14.** *See Insanity Defense in Federal Courts, Hearing Before the Subcommittee on Criminal Justice, House Judiciary Committee*, 97th Cong., 2d Sess. 117–18 (1982) (testimony of Prof. Arenella); *Reform of the Federal Insanity Defense,*

*Hearings Before the Subcommittee on Criminal Justice, House Judiciary Committee*, 98th Cong., 1st Sess. 370–74 (1983) (testimony of Prof. Morse).

testimony on the issue of whether a criminal defendant had the capacity to form specific criminal intent, and the decisions from these circuits are in accord with our holding in *Muench* that the disallowance of such testimony is not violative of due process. *See Campbell v. Wainwright*, 738 F.2d 1573, 1575, 1581–82 (11th Cir.1984) (upholding Florida's exclusionary rule); *Wahrlich v. Arizona*, 479 F.2d 1137 (9th Cir.) (per curiam), *cert. denied*, 414 U.S. 1011, 94 S.Ct. 375, 38 L.Ed.2d 249 (1973).

■ Based on the foregoing—namely, the decisions of the Wisconsin Supreme Court, the views of the Ninth and Eleventh Circuits and of respected commentators, Congress' enactment of Fed.R.Evid. 704(b) and the statutory and judicial pronouncements of other states—we hold that Wisconsin's rule barring expert psychiatric/psychological opinion testimony on the question of a defendant's capacity to form the intent to kill required under Wis.Stat. § 940.01 is not so without legal foundation that it offends due process as defense counsel has argued. On the contrary, we are of the opinion that the Wisconsin rule strikes a proper balance between the defendant's right to introduce evidence tending to negate the state's proof of his or her intent to kill with the logical and practical limits to the introduction of expert psychiatric testimony. Thus, we decline Haas' invitation to overrule *Muench* and reaffirm our holding therein that "a state may exclude expert testimony offered for the purpose of establishing that a criminal defendant lacked the capacity to form a specific intent." *Id.* at 1145.

### C.

Having determined that Wisconsin's narrowly tailored rule excluding psychiatric opinion testimony on the issue of capacity to form the intent to kill is not unconstitutional, we turn to Haas' three asserted reasons for offering the psychiatric testimony in order to determine whether the testimony was properly excluded in the Wisconsin state courts. As noted above, Haas argues that he had a constitutional right to introduce psychiatric/psychological testimony for the following purposes:

"(1) To give an opinion on whether the petitioner was able to form the requisite intent to take human life in contravention of 940.01 Wis.Stats; (2) to explain to the jury what the evidence indicates in terms of stress and the effect excessive stress has on people; and (3) to explain to the jury the significance of the physical evidence in relation to the defendant's state of mind and state whether the evidence fits into the concept of depravity of mind or 'heat of passion' manslaughter, lesser included offenses."

The first purpose is precisely the type of psychiatric opinion testimony prohibited under *Steele*. Thus, given our previous determination that the *Steele* rule is valid, it is clear that Haas was not entitled to introduce psychiatric testimony for this purpose, and we reject Haas' conclusory protestations to the contrary.

■ To the extent that Haas sought to introduce psychiatric testimony regarding the effects of stress on his capacity to form the intent to kill, we conclude that this, too, is prohibited under *Steele*. *See Flattum*, 122 Wis.2d at 305, 361 N.W.2d at 717. In any event, we agree with the district court that Haas "made no showing of the relevancy or probative value of testimony on stress except to assert during oral argument to the trial court that the petitioner was 'under a great deal of stress because of what he was perceiving in relationship to this young lady.'" Mem.Op. at 388. We also note that in his offer of proof, Haas' attorney failed to establish that the proffered psychiatric/ psychological witnesses were any more capable of interpreting the physical evidence "in terms of stress" than the members of the jury themselves. Thus, there was no showing that the experts were competent to testify on the effects of stress on an individual's mental state, and the trial court properly excluded this testimony. This court has previously recognized that "it is not a denial of due process to exclude psychiatric evidence which is properly determined not to be competent." *Burrus v. Young*, 808 F.2d at 594 (Coffey, J., concurring); *Hughes v.*

*Mathews,* 576 F.2d at 1256 n. 13. Although Haas maintains that he "preserved his record on this issue," this is of no consequence. An offer of proof

> "enables a trial judge to determine whether the evidence would be available for any purpose, and ensures that the record will be sufficiently detailed to permit appraisal by an appellate court of the scope and effect of the ruling, so that it can determine whether the trial court committed reversible error in excluding the evidence."

*United States ex rel. Veal v. DeRobertis,* 693 F.2d 642, 647 (7th Cir.1982) (quoting *Weinstein's Evidence* ¶ 103[03] at 103–27 (1977)). It is true that Wis.Stat. § 901.03(1)(b) only requires that an offer of proof convey "the substance of the evidence" to the trial court. However, it has also been noted that

> "[w]hile that may suffice to preserve the point for review, *much more is required if the offeror intends to show that there was, in fact, error.* For example, if the admissibility of the evidence turns on the existence or non-existence of a preliminary fact, the offeror must either already have proved the existence of the fact or it must be included in his offer."

*Burrus v. Young,* 808 F.2d at 588–89 (Coffey, J., concurring) (quoting Wright & Graham, *Federal Practice & Procedure* § 5040, at 212 (1977)) (emphasis in *Burrus* ). In light of Haas' failure to establish the relevancy of the "stress" evidence, as well as whether the evidence was a proper subject of expert testimony, we refuse to hold that the trial court's exclusion of this evidence was error, much less one of constitutional dimension.

Haas' offer of proof was similarly deficient in establishing the propriety of expert testimony on his third stated purpose: whether the evidence "fits" into the concepts of "depravity of mind" or "heat of passion" manslaughter. Specifically, Haas failed to establish that the proffered testimony regarding "depravity of mind" and "heat of passion" manslaughter was within the scientific knowledge and expertise of the proposed psychiatric/psychological witnesses.[15] Moreover, we agree with the trial court, the Wisconsin Court of Appeals and the district court that this testimony was offered as a blatant attempt to circumvent the *Steele* court's prohibition against psychiatric opinion testimony on the question of the petitioner's capacity to form the intent to kill. At the time Haas was convicted, Wis.Stat. § 940.02 provided that "[w]hoever causes the death of another human being ... [by] conduct imminently dangerous to another and evincing a depraved mind, regardless of human life" was guilty of second-degree murder.[16] Second-degree murder is a lesser included offense of first-degree murder, the sole difference between the two offenses being the specific intent to kill required for a first-degree murder conviction. *State v. Lee,* 108 Wis.2d 1, 321 N.W.2d 108 (1982). Thus, Haas' proffer of the psychiatrist and psychologist to state that, due to the stress-induced disillusionment Haas was experiencing, he had a "depraved mind" was nothing more than an attempt to have these witnesses testify that Haas' stress and disillusionment prevented him from forming the intent to kill, which is clearly prohibited under *Steele.* We therefore

---

**15.** We agree with the Wisconsin Supreme Court's conclusion that "psychiatrists are not legal experts, they are medical experts, and although they may testify as to the ultimate facts at issue, when a proper foundation for their testimony has been laid, they are not competent to give an opinion as to the guilt or innocence of the defendant as to any particular degree of murder or manslaughter." *Roe v. State,* 95 Wis.2d 226, 248, 290 N.W.2d 291, 302 (1980). "It constitutes no more than lay opinion of an ultimate fact to be determined by the jury. Its vice is that it is clothed with the seeming scientific knowledge of an expert and thus deceives the jury into believing that it is entitled to defer-

ence in consideration which is unsupported and unwarranted." *State v. Dalton,* 98 Wis.2d 725, 731, 298 N.W.2d 398, 401 (Ct.App.1980).

**16.** The phrase "conduct evincing a depraved mind" has been construed to mean conduct demonstrating an utter disregard for human life. *See Jones v. State,* 70 Wis.2d 41, 233 N.W.2d 430 (1975); *State v. Dolan,* 44 Wis.2d 68, 170 N.W.2d 822 (1969). After Haas' conviction, section 940.02 was amended to eliminate the "conduct evincing a depraved mind" language.

hold that the trial court properly found that Haas' psychiatric/psychological testimony was inadmissible for this purpose as well.

### III.

We hold that the trial court's refusal to admit Haas' psychiatric/psychological testimony for any of the above purposes was proper. The vast majority of the testimony was inadmissible under the *Steele* exclusionary rule, and Haas failed to establish the relevancy of that portion of the testimony that may have been outside the parameters of the rule. Consequently, Haas has failed to establish that the trial court's exclusion of this testimony violated his constitutional right to present relevant and competent evidence in his defense, the only constitutional basis Haas identifies in support of his petition for a writ of habeas corpus. Thus, the district court's denial of Haas' petition is

AFFIRMED.